In the Matter of D.L.C.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-163-CV

IN THE MATTER OF D.L.C. APPELLANT

AND

NO. 2-02-164-CV

IN THE MATTER OF D.L.G. APPELLANT

AND

NO. 2-02-170-CV

IN THE MATTER OF R.W.W. APPELLANT

AND

NOS.  2-02-171-CV

          2-02-172-CV

IN THE MATTER OF C.S.P. APPELLANT

----------

FROM COUNTY COURT AT LAW NO. 1 OF DENTON COUNTY

----------

OPINION

------------

I.  Introduction

This is a consolidated appeal involving issues of first impression in Texas. The five consolidated cases involve juvenile probation conditions that were amended to require Appellants D.L.C., D.L.G., C.S.P., and R.W.W. (collectively “Appellants”) to submit blood samples or other specimens for the purpose of creating a DNA record. 
 See 
Tex. Fam. Code Ann.
 § 54.0405(a)(2), (b) (Vernon 2002).  In four issues, Appellants contend that:  (1) requiring them to submit a DNA sample is unconstitutional based on ex post facto and double jeopardy protections; (2) requiring them to submit a DNA sample is unconstitutional based on the protections against unlawful search and seizure; (3) requiring them to submit a DNA sample violates Appellants’ rights against self-incrimination; and (4) the evidence was legally and factually insufficient to support the trial court’s finding that they should be subject to the DNA statute. We will affirm.

II.  Factual and Procedural Background

The factual and procedural background in each of the five consolidated cases is similar.  At the adjudication hearings conducted in accordance with Texas Family Code section 54.03, each Appellant pleaded guilty to either indecency with a child or aggravated sexual assault of a child, or both.  
Id.
 § 54.03 
(Vernon Supp. 2004).  Subsequently, the trial court conducted disposition hearings, and each 
Appellant was placed on probation and was required to register in the sex offender registration program.  
See id
. § 54.04; 
Tex. Code Crim. Proc. Ann
. ch. 62 (Vernon Supp. 2004).

After Appellants were placed on probation, the Legislature passed section 54.0405 of the Texas Family Code.  
Tex. Fam. Code Ann.
 § 54.0405.  That section requires a child who must register as a sex offender to also submit, as a condition of probation, a blood sample or other specimen for the purpose of creating a DNA record.  
Id
.
  Based on the new legislation, the State sought to amend the terms and conditions of Appellants’ probation to require them to submit a DNA sample for inclusion in the DNA databank.  Following contested hearings, the court granted the State’s motions to amend and ordered Appellants to submit a blood sample or other specimen for the purpose of creating a DNA record.
(footnote: 1)
 After being ordered to submit a blood sample, R.W.W. filed a motion to excuse further sex offender registration.  
See 
Tex. Code Crim. Proc. Ann
. art. 62.13(l).  The trial court granted R.W.W.’s motion to excuse further sex offender registration, 
and R.W.W. then filed a motion to rescind the DNA order. The trial court refused to rescind R.W.W.’s DNA order.

III.  Standard of Review for Constitutional Issues

If possible, we interpret a statute in a manner that renders it constitutional.  
FM Props. Operating Co. v. City of Austin
, 22 S.W.3d 868, 873 (Tex. 2000); 
Quick v. City of Austin
, 7 S.W.3d 109, 115 (Tex. 1998).  A party raising a facial challenge to the constitutionality of a statute must demonstrate that the statute always operates unconstitutionally.  
Wilson v. Andrews
, 10 S.W.3d 663, 670 (Tex. 1999).  In other words, a challenger must establish that no set of circumstances exists under which the statute would be valid.  
Id. 
 In reviewing a facial challenge to a statute's constitutionality, we consider the statute as written, rather than as it operates in practice.  
See Barshop v. Medina County Underground Water Conservation Dist.
, 925 S.W.2d 618, 626-27 (Tex. 1996).

However, an “as applied challenge” only requires the challenger to demonstrate that the statute operates unconstitutionally when applied to the challenger's particular circumstances.  
In re B.S.W.
, 87 S.W.3d 766, 771 (Tex. App.—Texarkana 2002, pet. denied).  When reviewing the constitutionality of a statute as applied, we presume the statute is valid and that the Legislature has not acted unreasonably or arbitrarily in enacting it.  
Ex parte Granviel
, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978); 
Sisk v. State
, 74 S.W.3d 893, 901 (Tex. App.—Fort Worth 2002, no pet.).  It is the challenger’s burden to show that the statute is unconstitutional.  
Ex parte Anderson
, 902 S.W.2d 695, 698 (Tex. App.—Austin 1995, pet. ref’d).

IV.  DNA Statute Does Not Violate Ex Post Facto 

or Double Jeopardy Clauses

Appellants contend in their first issue that the DNA statute, as applied to them, unconstitutionally violates the ex post facto and double jeopardy protections of the United States and Texas Constitutions.  Specifically, Appellants argue that the DNA statute’s retroactive application to them is unconstitutional because the statute was not enacted until after they had committed their offenses and had accepted agreed dispositions.  And, they argue that the statute is punitive on its face, as well as punitive in purpose and effect.  The State responds that the DNA statute violates neither ex post facto nor double jeopardy protections because neither the purpose nor the effect of the statute is punitive.

A.  The DNA Statute

Texas Family Code section 54.0405 (“the DNA statute”) provides:

(a) If a court or jury makes a disposition under Section 54.04 in which a child described by Subsection (b) is placed on probation, the court:

. . . .

(2) shall require as a condition of probation that the child:

(A) register under Chapter 62, Code of Criminal Procedure; and

(B) submit a blood sample or other specimen to the Department of Public Safety under Subchapter G, Chapter 411, Government Code, for the purpose of creating a DNA record of the child, unless the child has already submitted the required specimen under other state law.

(b) This section applies to a child placed on probation for conduct constituting an offense for which the child is required to register as a sex offender under Chapter 62, Code of Criminal Procedure.

Tex. Fam. Code Ann. 
§ 54.0405(a)(2), (b).  The Legislature made the change in law applicable to an offense committed before, on, or after the effective date of the statute—September 1, 2001.  Act of May 8, 2001, 77
th
 Leg., R.S., ch. 211, §§ 18(a), 23, 2001 Tex. Gen. Laws 399, 405.

B.  Ex Post Facto Analysis

The U.S. Constitution provides that “No . . . ex post facto Law shall be passed” by Congress.
  U.S.
 
Const.
 art. I, § 9, cl. 3.
(footnote: 2)  The Ex Post Facto Clause prohibits two types of laws that purportedly are at issue in this case:  (1) a law that criminalizes an action done before the passing of the law; and (2) a law that inflicts greater punishment for a crime than was possible when the crime was committed.  
Rogers v. Tennessee
, 532 U.S. 451, 456, 121 S. Ct. 1693, 1697 (2001); 
Carmell v. Texas
, 529 U.S. 513, 521-25, 120 S. Ct. 1620, 1626-28 (2000); 
United States v. Reynard
, 220 F. Supp. 2d 1142, 1157 (S.D. Cal. 2002); 
Rodriguez v. State
, 93 S.W.3d 60, 66 (Tex. Crim. App. 2002). Appellants argue that the DNA statute, as applied to them, violates the first ex post facto prohibition because it “became effective after the date of their offenses and after they had accepted agreed adjudications and dispositions in their cases.”  While Appellants’ position is procedurally accurate, the DNA statute does not retroactively criminalize acts performed by Appellants before the DNA statute was passed.  Appellants were adjudicated delinquent based on qualifying sex offenses.  These offenses constituted criminal acts before the DNA statute was passed.  The DNA statute does not retroactively alter the definition of a particular criminal act.  
See Reynard
, 220 F. Supp. 2d at 1158. To the contrary, under the statute, DNA material is extracted after adjudication and has no effect on the underlying offense or punishment.  
See
 
Tex. Fam. Code Ann.
 § 54.0405.  Thus, the DNA statute does not criminalize an act that occurred prior to enactment of the statute.  
See In re Appeal in Maricopa County Juvenile Action Nos. JV-512600 and JV-512797
, 930 P.2d 496, 499 (Ariz. Ct. App. 1996).

Appellants also contend that the retroactive application of the DNA statute violates the Ex Post Facto Clause because the statute is punitive on its face, or in the alternative, it is punitive in its purpose and effect.  The State, on the other hand, contends that the statute is not penal in nature.  No Texas court has addressed whether the DNA statute constitutes retroactive punishment forbidden by the Ex Post Facto Clause.
(footnote: 3)  The framework for our ex post facto analysis is, however, well established.  
See Smith v. Doe
, 538 U.S. 84, 123 S. Ct. 1140, 1146 (2003) (holding Alaska’s retroactive sex offender registration statute not violative of the Ex Post Facto Clause); 
Rodriguez
, 93 S.W.3d at 67-68 (holding Texas’s retroactive amendments to sex offender registration statute not violative of the Ex Post Facto Clause).  Under the required analysis, we must ascertain whether by enacting the statute the Legislature meant the statute to establish “civil” proceedings.  
Smith,
 123 S. Ct. at 1146-47 (quoting 
Kansas v. Hendricks
, 521 U.S. 346, 361, 117 S. Ct. 2072, 2082 (1997)).  If the Legislature manifested an expressly punitive intent, the inquiry is at an end and the statute is a violation of the Ex Post Facto Clause.  
Smith
, 123 S. Ct. at 1147; 
Rodriguez
, 93 S.W.3d at 67.  
If, however, the Legislature intended to enact a civil, nonpunitive regulatory scheme, then we must further examine whether the statutory scheme is nonetheless “‘so punitive either in purpose or effect as to negate [the State’s] intention’ to deem it ‘civil.’”
  Smith
, 123 S. Ct. at 1147.  
We defer to the Legislature’s stated intent, so only the clearest proof will suffice to override legislative intent and transform what has been legislatively denominated a civil remedy into a criminal penalty.  
Id.
; 
Rodriguez
, 93 S.W.3d at 67.

Appellants argue that the DNA statute is punitive because the Legislature placed it in the “dispositional, or punishment, portions” of the Juvenile Justice Code.  However, the location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one.
(footnote: 4)  
Smith,
 123 S. Ct. at 1148.  Moreover, Appellants’ argument contradicts the legislatively stated purpose of the DNA statute:

(a) The principal purpose of the DNA database is to assist federal, state, or local criminal justice or law enforcement agencies in the investigation or prosecution of sex-related offenses or other offenses in which biological evidence is recovered.

(b) In criminal cases, the purposes of the DNA database are only for use in the investigation of an offense, the exclusion or identification of suspects, and the prosecution of the case.

(c) Other purpose of the database include:

(1) assisting in the recovery or identification of human remains from a disaster or for humanitarian purposes;

(2) assisting in the identification of living or deceased missing persons; and

(3) if personal identifying information is removed:

(A) establishing a population statistics database;

(B) assisting in identification research and protocol development; and

(C) assisting in database or DNA laboratory quality control.

Tex. Gov’t Code Ann. 
§ 411.143(a)-(c) (Vernon 1998).  The Legislature’s express, primary intent in creating a DNA record, as set forth above, is for identification purposes in past and future sex offenses, not to further punish a person for the offense at hand.

Next, we address whether, despite the intended civil, regulatory nature of the DNA statute, it is nonetheless so punitive in effect that this punitive effect overrides the Legislature’s nonpunitive intent.  
Smith
, 123 S. Ct. at 1147.  In making this determination, we apply the seven nonexclusive factors set forth by the Supreme Court in 
Kennedy v. Mendoza-Martinez
, 372 U.S. 144, 168-69, 83 S. Ct. 554, 567-68 (1963):  (1) whether the DNA statute imposes an affirmative disability on qualifying offenders; (2) whether collection of blood has historically been regarded as punishment; (3) whether the DNA statute’s provisions are effective only upon a finding of scienter; (4) whether operation of the DNA statute will promote the traditional aims of punishment—i.e., retribution and deterrence; (5) whether the DNA statute regulates behavior that is already a crime; (6) whether the DNA statute serves some nonpunitive purpose; and (7) whether the DNA blood-draw provisions are excessive in relation to the nonpunitive purpose, if any.  
See Reynard
, 220 F. Supp. 2d at 1161-62 (citing 
Kennedy
, 372 U.S. at 168-69, 83 S. Ct. at 567-68)).  Our task is not simply to count the factors, but also to weigh them.  
Rodriguez
, 93 S.W.3d at 68.  Accordingly, we will discuss the varying weight to be given each factor.  
See id. 
 

Appellants argue under the first 
Kennedy
 factor that the disabilities imposed on them by being chronicled in a DNA database are:  (1) the prospect of infinite government monitoring in violation of their right to privacy; (2) interference with their right to receive effective assistance of counsel because they were not advised of the nature and possible consequences of their plea at their adjudication hearing; and (3) the inability to have their records fully sealed. An inmate or probationer has diminished constitutional rights, including a diminished right to privacy.  
See, e.g., Griffin v. Wisconsin
, 483 U.S. 868, 874, 107 S. Ct. 3164, 3169 (1987).  Additionally, because the statute allows limited DNA analysis of blood samples and limited distribution of the information acquired from the samples, wrongful disclosures that may violate privacy rights should be minimized.  
See
 
Tex. Gov’t Code Ann. 
§ 411.143(c)(3) (requiring personal identification information to be removed prior to establishing a population statistics database, etc.);
 see also Landry v. Attorney General
, 709 N.E.2d 1085, 1095-96 (Mass. 1999) (holding that where DNA Act provides safeguards against wrongful use of DNA information and limits purposes for which DNA records may be distributed, plaintiffs’ speculation that data may be used wrongfully is contrary to language of Act), 
cert. denied
, 528 U.S. 1073 (2000).  Appellants’ privacy concerns do not demonstrate the present imposition of an affirmative disability on them.

Appellants’ next contention, that because they were not advised of a yet-to-be enacted law requiring them to submit a DNA sample, they received ineffective assistance of counsel at their adjudication hearings, likewise, does not demonstrate the imposition of an affirmative disability on Appellants.  The record before us does not show, nor do Appellants argue, that they would not have pleaded guilty at their adjudication hearings had they been advised of the possibility that at some point in time they could be required to submit a DNA sample.  In the absence of such evidence, the second prong of the 
Strickland
 ineffective assistance of counsel claim cannot be met.  
See Brasfield v. State
, 30 S.W.3d 502, 505 (Tex. App.—Texarkana 2000, no pet.); 
see also Appeal in Maricopa County
,
 
930 P.2d at 499.

Finally, Appellants’ arguments that they will be unable to have their juvenile records fully sealed if they provide a DNA sample do not demonstrate the imposition of an affirmative disability upon Appellants.  Appellants cite no evidence showing any efforts, unsuccessful or otherwise, that they have made to have their records sealed; therefore, their sealing argument is premature.  
See In re J.R.
, 793 N.E.2d 687, 702 (Ill. App. Ct. 2003) (holding that respondent’s argument that statute barring expungement of previously submitted blood specimens was unconstitutional was premature because he had made no effort to expunge the information).  
We simply cannot say whether or not Appellants may be successful in a future action to seal their records.

Thus, applying the first 
Kennedy
 factor, we conclude that the Texas DNA statute imposes only a minimal affirmative disability, if any, on qualifying offenders because it merely requires them to contribute a one-time “DNA fingerprint” to the State’s DNA database.  
See, e.g., Smith
, 123 S. Ct. at 1145-46, 1154 (holding Alaska’s sex offender registration statute was nonpunitive and did not violate Ex Post Facto Clause, despite lifetime registration and quarterly verification requirements); 
Ex parte Robinson
, 116 S.W.3d 794, 798 (Tex. Crim. App. 2003) (holding 1999 version of Texas’s Sex Offender Registration Program, like the 1997 version, was nonpunitive in both intent and effect);
 Rodriguez
, 93 S.W.3d at 69-79 (holding Texas’s sex offender registration statute was nonpunitive and did not violate Ex Post Facto Clause); 
State v. Ward
, 869 P.2d 1062, 1066 (Wash. 1994) (holding Washington’s sex offender registration statute was nonpunitive and did not violate Ex Post Facto Clause).

With regard to the second 
Kennedy
 factor—whether the collection of blood historically constituted punishment—Appellants contend that requiring submission of a DNA sample, while not traditional in the sense that DNA technology is modern, is primarily linked with punishment for criminal and juvenile offenses.  In support of this argument, Appellants rely on Texas Government Code sections 411.1471, 411.1472, 411.148, and 411.150. 
 Tex. Gov’t Code Ann. 
§§ 411.1471-.1472, 411.148, 411.150 (Vernon Supp. 2004).  These provisions were, however, enacted or amended within the past four years and cannot be viewed as a historical pattern evidencing the use of blood draws as punishment.
  
See Rodriguez
, 93 S.W.3d at 72 (noting that no historic analog existed for viewing sex offender registration statutes as historically punitive).  We have located no authority to support the proposition that the collection of blood, for identification purposes or otherwise, has historically been regarded as punishment.  
See generally Breithaupt v. Abram
, 352 U.S. 432, 435, 437, 77 S. Ct. 408, 410-11 (1957) (recognizing that “there is nothing ‘brutal’ or ‘offensive in the taking of a sample of blood when done, . . . under the protective eye of a physician” and holding that “a blood test taken by a skilled technician is not such ‘conduct that shocks the conscience’ . . . [or] such a method of obtaining evidence that it offends a ‘sense of justice.’”).
  Accordingly, to the extent the second 
Kennedy
 factor is weighed, we weigh it in favor of a finding that the DNA statute is nonpunitive. 
See Rodriguez
, 93 S.W.3d at 72.

Appellants concede that, under the third 
Kennedy
 factor, because the DNA statute automatically applies to juveniles adjudicated of qualifying offenses, no scienter is required to trigger its application.  
See Reynard
, 220 F. Supp. 2d at 1162.  The lack of scienter element supports a nonpunitive construction of the statute.  
Rodriguez
, 93 S.W.3d at 72.  

Under the fourth 
Kennedy
 factor—whether the statute promotes the traditional aims of punishment—Appellants argue that the overreaching consequences of the DNA statute deter sex offenses and that imposition of the additional penalty of a DNA sample requirement on past criminal conduct alone is a form of retribution.  The establishment of a DNA databank may deter recidivism on the part of convicted persons.  
State v. Olivas
, 856 P.2d 1076, 1085-86 (Wash. 1993); 
In re Nicholson
, 724 N.E.2d 1217, 1221 (Ohio Ct. App. 1999);
 compare People v. King
, 99 Cal.Rptr.2d 220, 228 (Cal. Ct. App. 2000) (stating that “[s]peedy identification and apprehension of an offender, therefore, will prevent crime even if DNA testing has no deterrent effect”), 
cert. denied
, 532 U.S. 950 (2001).  
Thus, the Texas DNA statute may promote, to some extent, the traditional deterrent aim of punishment.  Nonetheless, the legislatively stated purpose of the statute is identification, i.e. to exclude or include registrants as suspects in 
past
 and 
future
 offenses, not deterrence.  
See
 
Tex. Gov’t Code Ann.
 § 411.143(a).  
And, the “threat” of submitting to a blood draw, i.e. a needle stick, does not, in itself, seem significant enough to deter possible offenders from committing sex offenses. 
See, e.g., Schmerber v. California
, 384 U.S. 757, 771, 86 S. Ct. 1826, 1836 (1966) (noting, in DWI case, that blood tests are commonplace and for most people involve no risk, trauma, or pain)
.  Consequently, although the DNA statute may serve some incidental deterrent purpose, the mere presence of a deterrent purpose does not render the DNA statute criminal in effect.  
Smith
, 123 S. Ct. at 1152.  This 
Kennedy
 factor also weighs in favor of a nonpunitive construction of the DNA statute.

Appellants submit that under the fifth 
Kennedy
 factor the DNA statute applies to conduct that has already been deemed a crime because a juvenile must have committed a qualifying offense before he is required to provide a DNA sample.  We agree that the DNA statute applies to behavior that is already a crime and that a statute’s retroactive application to criminal behavior is more likely to be characterized as a penal sanction.  
See Rodriguez
, 93 S.W.3d at 74. This factor alone, however, is insufficient to render the statute punitive because the fact that an adjudication for a qualifying offense triggers application of the DNA statute is a characteristic common to all regulatory disabilities that follow from a prior conviction, such as the loss of the right to vote.  
Id.
  Moreover, the submission of a DNA sample does not alter the punishment assessed or imposed upon a juvenile.  As the State points out, the DNA statute provides new penalties only if a juvenile refuses to provide a DNA specimen and thereby violates a condition of his probation.
  
See 
Tex. Gov’t Code Ann. 
§ 411.154 (Vernon 1998) (stating that order issued to enforce compliance with DNA statute is appealable as criminal matter and is reviewable for abuse of discretion).  Because noncompliance with the DNA statute is punished as a separate offense, any potential ex post facto problem is diminished.  
Reynard
, 220 F. Supp. 2d at 1162 (citing 
Russell v. Gregoire, 
124 F.3d 1079, 1088-89 (9th 
C
ir. 1997), 
cert. denied
, 523 U.S. 1007 (1998)).

Appellants argue that the sixth 
Kennedy
 factor is of minimal importance because almost any statute encompasses some nonpunitive, rational purpose. The DNA statute serves a nonpunitive purpose by reducing the risk that innocent persons may be wrongly held for crimes that they did not commit.  
146 
Cong. Rec
. H8572-01, and *H8576; 
see also
 146 
Cong. Rec
. S11645-02, at *S11646 (reporting that DNA testing has exonerated over seventy-five convicted persons in the United States and Canada).  Thus, the sixth 
Kennedy
 factor weighs in favor of a nonpunitive construction of the DNA statute. With regard to the final 
Kennedy
 factor, Appellants contend that the DNA statute is excessive because the public is already protected from sex offenders by the sex offender registration laws.  Consequently, Appellants argue that “the risks of the DNA statute greatly outweigh any legitimate government interest.” The sex offender registration law does not, however, create the type of information that the DNA statute seeks to obtain.  Sex offender registration information cannot assist law enforcement in exonerating those convicted of crimes involving DNA evidence.  
See 
Tex. Gov’t Code Ann
. § 411.143(b); 
see generally Nicholas v. Goord
, No. 01Civ.7891(RCC)(GWG., 2003 WL 256774, at *9, 11 (S.D.N.Y. Feb. 6, 2003).
(footnote: 5)  Thus, the DNA statute seeks different information than the sex offender registration statute, and the information is used for a different purpose.  Additionally, possible privacy risks posed by the DNA statute have been legislatively minimized by specific statutory provisions mandating that identifying information be removed from the samples when they are used for certain purposes.  
See 
Tex. Gov’t Code Ann. 
§ 411.143(c)(3). We hold that the blood draw provisions of the DNA statute are not excessive in relation to the nonpunitive purposes for which the statute was enacted.  
Accord Robinson
, 116 S.W.3d 794 (pointing out that court had already thoroughly applied 
Kennedy
 factors to 1997 version of Sex Offender Registration Program and found it nonpunitive in effect);
 Rodriguez
, 93 S.W.3d at 68-79 (holding, after applying 
Kennedy 
factors, sex offender registration statute was not excessive in relation to nonpunitive purpose of statute).

In summary, the DNA statute does not criminalize any act or omission that Appellants committed prior to enactment of the statute and does not inflict greater punishment on Appellants for their adjudicated offenses.  An application and weighing of the 
Kennedy
 factors demonstrates that the DNA statute is not “so punitive” in effect that it prevents this court from legitimately viewing the DNA statute as regulatory in nature.  
See Reynard
, 220 F. Supp. 2d at 1162. Accordingly, we hold that Appellants have failed to demonstrate that, as applied to them, the Texas DNA statute violates the Ex Post Facto Clause.
(footnote: 6)
 C.  Double Jeopardy Analysis

Appellants also argue that the DNA statute violates the Double Jeopardy Clause of the United States Constitution.  That Clause provides that no “person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.”  
U.S. Const. 
amend.
 V.  The Clause protects only against the imposition of multiple 
criminal
 punishments for the same offense and then only when such occur in successive proceedings.  
Hudson v. United States
, 522 U.S. 93, 99, 118 S. Ct. 488, 493 (1997).

Here, Appellants were neither prosecuted a second time for the crimes for which they were adjudicated nor were they punished a second time for those crimes.
 
 Thus, Appellants have not been placed in double jeopardy by the DNA statute, and the Double Jeopardy Clause does not apply here.  
See Kellogg
, 728 N.Y.S.2d at 647 (holding retroactive application of DNA statute did not violate Double Jeopardy Clause).  Appellants have failed to demonstrate that, as applied to them, the Texas DNA statute violates the Double Jeopardy Clause.  We overrule Appellants’ first issue.

V.  DNA Statute Is Not an Unreasonable Search or Seizure

In their second issue, Appellants argue that a blood draw ordered pursuant to the DNA statute constitutes an unreasonable search and seizure under the Fourth Amendment.  Appellants argue that in these cases no probable cause or exigent circumstances exist justifying a warrantless search and seizure.  The State contends that requiring a DNA specimen from a person who has committed a qualifying offense does not offend the Fourth Amendment. The Fourth Amendment states, 

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const.
 amend.
 IV
.  Blood testing procedures plainly constitute searches of persons and depend antecedently upon seizures of persons within the meaning of the Fourth Amendment.  
See
 
Schmerber
, 384 U.S. at 767, 86 S. Ct. at 1834.  The Fourth Amendment does not, however, proscribe all searches and seizures, but only those that are unreasonable.  
Skinner v. Ry. Labor Executives’ Ass’n
, 489 U.S. 602, 619, 109 S. Ct. 1402, 1414 (1989).  The reasonableness of a search or seizure “depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.” 
Id.
 (citing 
United States v. Montoya de Hernandez
, 473 U.S. 531, 537, 105 S. Ct. 3304, 3308 (1985)).

Traditionally, courts evaluating the reasonableness of a search or seizure have applied a classic Fourth Amendment “balancing” analysis.
(footnote: 7)  Under the balancing analysis, a reviewing court determines whether the search was reasonable by weighing the government’s interest in conducting the search and the degree to which the search actually advances that interest against the gravity of the intrusion upon personal privacy.  
Brown v. Texas
, 443 U.S. 47, 51, 99 S. Ct. 2637, 2640 (1979).  A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual’s reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. 
 Id.
  Three Texas cases have applied, or followed precedent that has applied, the balancing test to claims that an order requiring submission of a DNA sample constituted an unreasonable search and seizure and have found no Fourth Amendment violation.  
See Velasquez v. Woods
, 329 F.3d 420, 421 (5th Cir. 2003)
 (following 
Shaffer
, 
Rise
, and 
Jones
, applying balancing test, as well as Second Circuit case applying special needs analysis); 
Rome v. Burden
, No. 03-01-629-CV, 2002 WL 31426177, at *2 (Tex. App.—Austin Oct. 31, 2002, pet. denied) (not designated for publication); 
Groceman v. United States Dep’t of Justice
, No. CIV.A.301CV1619G, 2002 WL 1398559, at *3-4 (N.D. Tex. Jun. 26, 2002) (memo. order).
(footnote: 8)
 Two recent United States Supreme Court cases, however, cast doubt upon the continuing applicability of a pure traditional balancing test analysis as the proper test for determining the reasonableness of a search or seizure, at least in evaluating warrantless, suspicionless searches. 
 Ferguson v. City of Charleston
, 532 U.S. 67, 121 S. Ct. 1281 (2001); 
City of Indianapolis v. Edmond
, 531 U.S. 32, 121 S. Ct. 447 (2000); 
see also Goord
, 2003 WL 256774, at *9, 11.
(footnote: 9)  In
 Ferguson, 
the Supreme Court held that a statute authorizing a state hospital to test the urine of pregnant women receiving prenatal care at the hospital was unreasonable under the Fourth Amendment because the State failed to show a special need for the information acquired apart from the normal need for law enforcement.  532 U.S. at 84, 121 S. Ct. at 1292.  In 
Edmond
, 
the Supreme Court held that a warrantless, suspicionless stop of random motor vehicles at a drug interdiction checkpoint for the purpose of an exterior canine sniff was unreasonable under the Fourth Amendment because the State failed to show a special need for the information acquired in the search apart from the normal need for law enforcement; indeed, the very purpose of the stop was law enforcement.  531 U.S. at 46-47, 121 S. Ct. at 456-57.

In both 
Ferguson
 and 
Edmond
, the Supreme Court began with the premise that warrantless searches or seizures not based upon an individualized suspicion of wrongdoing violate the Fourth Amendment.  
Ferguson
, 532 U.S. at 76-77, 121 S. Ct. at 1287-88; 
Edmond
, 531 U.S. at 37, 121 S. Ct. at 451.  The Court recognized that it had, however, in limited circumstances upheld the constitutionality of certain regimes of warrantless, suspicionless searches where the program compelling the search or seizure was designed to serve “special needs, beyond the normal need for law enforcement.”  
Edmond
, 531 U.S. at 37, 121 S. Ct. at 451 (recognizing prior case upholding constitutionality of brief, suspicionless seizures of motorists at fixed border patrol checkpoints). The Court then analyzed the programs at issue in 
Ferguson
 and 
Edmond
 to determine whether the warrantless, suspicionless searches and seizures in those cases fell into this narrow category of permissible, constitutional searches and seizures based on special needs of law enforcement.  
Ferguson
, 532 U.S. at 81-86, 121 S. Ct. 1290-93; 
Edmond
, 531 U.S. at 40-48, 121 S. Ct. at 453-58.  Concluding that the programs 
had as their primary purpose the discovery of evidence against particular individuals suspected of committing a specific crime—an ordinary or normal law enforcement function—
the Supreme Court declared the searches and seizures in both 
Ferguson 
and 
Edmond 
unreasonable under the Fourth Amendment.  
Ferguson
, 532 U.S. at 85-86, 121 S. Ct. 1292-93; 
Edmond
, 531 U.S. at 48, 121 S. Ct. at 458. 

Under the analysis utilized by the Supreme Court in 
Ferguson
 and 
Edmond
, we must determine whether the warrantless, suspicionless search and seizure mandated by the DNA statute constitutes a “special need, beyond the normal need for law enforcement.”  
See Goord
, 2003 WL 256774, at *11.  To answer this question, we must first ascertain the “primary purpose” of the Texas DNA statute.  
See id.  
We have already determined under our ex post facto analysis that the principal purpose of the Texas DNA database is to assist in the investigation or prosecution of sex-related offenses or other offenses in which biological evidence is recovered and to exclude or identify suspects.  
Tex. Gov’t Code Ann. 
§ 411.143(a)-(b).  The secondary purposes of the DNA database are to assist in the recovery or identification of human remains from a disaster or for humanitarian purposes; to assist in the identification of living or deceased missing persons; and, after personal identifying information is removed, to establish a population statistics database, assist in identification research and protocol development, and assist in database or DNA laboratory quality control. 
 Id.
 § 411.143(c)(1)-(3).

We next analyze whether these purposes demonstrate a need for the DNA samples beyond the normal need for law enforcement.  
See Goord
, 2003 WL 256774, at *12 (citing 
Nat’l Treasury Employees Union v. Von Raab
, 489 U.S. 656, 665, 109 S. Ct. 1384, 1390-91 (1989)); 
see also Edmond
, 531 U.S. at 41-42, 121 S. Ct. at 454-55.  The 
Goord 
court, reviewing a Fourth Amendment challenge to a DNA statute similar to the Texas DNA statute, explained that the New York DNA indexing statute’s primary purpose was not a “normal” or “ordinary” purpose of law enforcement:

Obviously, obtaining a DNA sample for a databank is within the scope of law enforcement, broadly defined, and certainly has a relationship to the solving of crimes.  But the primary purpose of collecting samples for the databank is not for the State to determine that a particular individual has engaged in some specific wrongdoing.  Unlike a blood or urine sample that may contain traces of drugs, the samples of blood for the DNA databank prove nothing by themselves regarding whether the donor has committed a crime. . . .  They merely offer the potential that some very small percentage may be relevant to solving a crime that in all likelihood has not even been committed at the time of the search.

2003 WL 256774, at *13; 
see also Reynard
, 220 F. Supp. 2d at 1166-68 (holding federal DNA indexing statute served special needs, beyond normal or ordinary needs of law enforcement).

Unlike the programs in 
Edmond 
and 
Ferguson
, the Texas DNA statute is not designed to discover and produce evidence of a specific individual’s criminal wrongdoing.  
Goord
, 2003 WL 256774, at *13
.  
The purposes of the Texas DNA statute serve “special needs,” not “normal” or “ordinary” purposes of law enforcement.
 
 
See United States v. Kimler
, 335 F.3d 1132, 1146 (10th Cir.) (holding federal DNA Backlog Elimination Act of 2000 constitutional under special needs analysis), 
cert. denied
, ___ S. Ct. ___, 2003 WL 22736543 (U.S. Dec. 8, 2003);
 
Goord
, 2003 WL 256774, at *14 (holding New York’s DNA indexing program constitutional under special needs analysis);
 Miller
, 259 F. Supp. 2d at 1177 (holding Patriot Act’s DNA provision constitutional under special needs analysis); 
Sczubelek
, 255 F. Supp. 2d at 319-23 (holding federal DNA Backlog Elimination Act of 2000 constitutional under special needs analysis); 
Vore
, 281 F. Supp. 2d at 1134, 1137 (same);
 Reynard
, 220 F. Supp. 2d at 1169 (same);
 Kellogg
, 728 N.Y.S.2d at 647 (holding New York’s DNA statute constitutional under special needs analysis);
 Olivas
, 856 P.2d at 1086 (holding Washington’s DNA statute constitutional under special needs analysis).

Even where a court concludes that a statute or program qualifies as a “special need, beyond the normal need for law enforcement,” the reasonableness of the intrusion must then still be evaluated through a balancing analysis.  
See Goord
, 2003 WL 256774, at *11, 14.  Thus, having 
determined that the Texas DNA statute falls within the “special needs” exception to the unconstitutionality of a warrantless, suspicionless search or seizure, we next conduct a fact-specific balancing of the intrusion on Appellants’ Fourth Amendment rights against the promotion of legitimate governmental interests in solving past and future crimes, identifying human remains and missing persons, establishing a population statistics database, and assisting in identification research, protocol development, and database or DNA laboratory quality control.  
Id.; see also Miller
, 259 F. Supp. 2d at 1177. 

The physical intrusion of providing a blood sample for DNA testing is minimal.  
See, e.g., Skinner
, 489 U.S. at 624-26, 109 S. Ct. at 1417-18 (discussing how slight an intrusion blood and breath tests pose).  Additionally, a juvenile’s expectation of privacy is significantly diminished by the fact that he or she has been adjudicated delinquent for committing a sexual offense.  
See
 
Appeal in Maricopa County
, 930 P.2d at 501 (recognizing diminished privacy right of juvenile delinquent); 
see also Goord
, 2003 WL 256774, at *16 (recognizing “convicted felons should be entitled to almost no expectation that their identities will remain secret”).  We balance the fairly minimal intrusiveness of the sampling and a juvenile’s reduced privacy expectations
(footnote: 10) against the public’s interest in effective law enforcement, crime prevention, and the identification and apprehension of those who commit sex offenses and conclude that the governmental interest promoted by the DNA statute rightfully outweighs its corresponding minimal physical intrusion and encroachment upon a juvenile’s privacy.  
See Appeal in Maricopa County
, 930 P.2d at 501
.
 Consequently, under either existing federal case law in Texas applying the traditional balancing analysis
(footnote: 11) or under the 
Ferguson
 and 
Edmond 
special needs analysis, we hold that the search and seizure occasioned by the DNA statute does not violate the Fourth Amendment to the United States Constitution.
(footnote: 12)  In their facial Fourth Amendment challenge, Appellants have failed to establish that the Texas DNA statute operates unconstitutionally.  We overrule Appellants’ second issue.

VI.  DNA Statute Does Not Violate Right Against Self-Incrimination

Appellants argue in their third issue that ordering them to place their DNA samples in the DNA database for the purpose of investigation and prosecution of future crimes violates their rights against self-incrimination under the United States and Texas Constitutions.  Their argument is based on the dissent in 
Schmerber
, which emphasizes the testimonial value of a person’s DNA imprint; on their assertion that the Texas Constitution provides greater protections against self-incrimination than the United States Constitution;
(footnote: 13) and on their understanding of 
Ex parte Renfro
, 999 S.W.2d 557 (Tex. App.—Houston [14
th
 Dist.] 1999, pet. ref’d).  The State responds that a blood sample is not testimonial in nature; thus, the DNA statute does not violate the Self-Incrimination Clause.

The Fifth Amendment to the United States Constitution states, “No person shall be . . . compelled in any criminal case to be a witness against himself . . . .”  
U.S. Const.
 amend. V.  In applying the Fifth Amendment privilege against self-incrimination, the United States Supreme Court draws a distinction between a suspect’s communications or testimony and real or physical evidence obtained from the suspect.  
Schmerber
, 384 U.S. at 760-61, 86 S. Ct. at 1832.  While the Fifth Amendment protects a suspect from being compelled to provide evidence of a testimonial or communicative nature, it does not protect a suspect from being compelled to provide real or physical evidence.  
Id.
 at 763-64, 86 S. Ct. at 1832.  In 
Schmerber
, the Supreme Court held that a compelled extraction of a blood sample and its chemical analysis, for blood alcohol content, does not amount to testimonial or communicative evidence and therefore is not prohibited by the Fifth Amendment.  
Id. 
at 765, 86 S. Ct. at 1832-33.  Likewise, the Fifth Amendment privilege against self-incrimination is not violated by the taking of blood under Texas Family Code § 54.0405(a)(2)(B) for DNA analysis.
  
See Shaffer
, 148 F.3d at 1181;
 Belgarde v. Montana
, 123 F.3d 1210, 1214 (9th Cir. 1997)
; 
Boling
, 101 F.3d at 1340;
 Vore
, 281 F. Supp. 2d at 1137-38;
 Reynard
, 220 F. Supp. 2d at 1174; 
Forrest v. State
, No. 2002-KA-00206-COA, ___ So.2d ___, 2003 WL 21916440, at *3 (Miss. Ct. App. Aug. 12 2003); 
Cooper
, 943 S.W.2d at 705; 
Norman
, 660 N.W.2d at 557 (holding that obtaining DNA sample by oral swab does not violate Fifth Amendment); 
Johnson
, 529 S.E.2d at 779.

Moreover, 
Renfro
 does not support Appellants’ position.  In 
Renfro
, the court analyzed a condition of probation that required the defendant to take a polygraph to determine whether the condition violated the privilege against self-incrimination:

Although the Appellant has a duty to answer the polygraph examiner’s questions truthfully, unless he invokes the privilege, shows a realistic threat of self-incrimination and nevertheless is required to answer, no violation of his right against self-incrimination is suffered.  The mere requirement of taking the test in itself is insufficient to constitute an infringement of the privilege.

999 S.W.2d at 561 (citations omitted).  Here, Appellants claim that the order requiring them to place their DNA in an accessible DNA database exposes them to a realistic threat of self-incrimination and that therefore they are being forced to submit evidence against themselves.  Appellants, however, have not yet submitted blood samples.  Therefore, this issue is not ripe.  
See Waco ISD v. Gibson
, 22 S.W.3d 849, 853 (Tex. 2000) (stating that ripeness doctrine prevents premature adjudication of hypothetical or contingent situations). We hold that the Texas DNA statute does not violate the Self-Incrimination Clause.  Appellants have failed to demonstrate that, as applied to them, the Texas DNA statute violates the Self-Incrimination Clause.  We overrule Appellants’ third issue.

VII.  Legal and Factual Sufficiency

Appellants complain in issue four that the evidence is both legally and factually insufficient to support the trial court’s finding that they should be subject to the DNA statute.
  Appellants base their argument on the fact that R.W.W. has been excused from sex offender registration and contend that the other Appellants may still exercise their right to request to be excused from registration.  Consequently, they contend that the evidence is insufficient to subject them to the DNA statute’s blood draw requirement.  The State responds that each of the Appellants was adjudicated of a qualifying offense and is therefore subject to the requirements of the DNA statute. 

A.  Standard of Review

In reviewing Appellants’ sufficiency challenge to the evidence supporting their dispositions, we review the evidence under the civil standard.  
In re J.D.P.
, 85 S.W.3d 420, 422 (Tex. App.—Fort Worth 2002, no pet.).  
In reviewing legal sufficiency, we consider only the evidence and inferences tending to support the findings under attack and set aside the judgment only if there is no evidence of probative force to support the findings.  
In re T.K.E.
, 5 S.W.3d 782, 785 (Tex. App.—San Antonio 1999, no pet.); 
see In re A.S.
, 954 S.W.2d 855, 858 (Tex. App.—El Paso 1997, no pet.); 
In re S.A.M.
, 933 S.W.2d 744, 745 (Tex. App.—San Antonio 1996, no writ).  In reviewing Appellants’ factual sufficiency claim, we consider and weigh all the evidence and set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust.  
T.K.E
., 5 S.W.3d at 785; 
see In re K.L.C.
, 972 S.W.2d 203, 206 (Tex. App.—Beaumont 1998, no pet.); 
A.S.
, 954 S.W.2d at 862.

B.  Sufficiency of the Evidence

The evidence in each of Appellants’ records demonstrates that they were all adjudicated for either indecency with a child or aggravated sexual assault of a child, or both.  Each of these offenses is a “reportable conviction or adjudication” subject to the sex offender registration program.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 62.01(5)(A), 62.02(a) (Vernon Supp. 2004).  At the disposition hearings conducted in accordance with Texas Family Code section 54.04, each Appellant was placed on probation.  
Tex. Fam. Code Ann.
 § 54.04. As a condition of probation, each Appellant was required to register in the sex offender registration program.  Then, after the DNA statute was passed, the trial court amended each Appellants’ probation conditions to require him to submit a DNA specimen.

Appellants’ argument that R.W.W. has been excused from sex offender registration and therefore cannot be required to comply with the DNA statute is contrary to the statute’s terms.  R.W.W. and the other Appellants were adjudicated of a qualifying offense under Chapter 62.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 62.01(5)(A).
  
A plain reading of the DNA statute requires the court to include two terms in a juvenile sex offender’s conditions of probation
:  one of which is the registration as a sex offender; the other, which is not contingent upon the first, is submission of a DNA specimen.
  Tex. Fam. Code Ann
. § 54.0405(a)(2); 
see also
 
See Sanchez v. State
, 995 S.W.2d 677, 683 (Tex. Crim. App.) (stating we interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results), 
cert. denied
, 528 U.S. 1021 (1999)
.
  The fact that a juvenile may be excused from registration does not alter the fact that he was placed on probation for an offense requiring sex offender registration or nullify the independent requirement of a DNA sample.
(footnote: 14)  
Thus, here, because Appellants were adjudicated of a qualifying offense and were placed on probation, the prerequisites for applying the DNA statute were met.  
See 
Tex. Fam. Code Ann. 
§ 54.0405(b) (specifying that DNA statute applies to child placed on probation for conduct constituting an offense requiring registration as sex offender).

Likewise, we decline to adopt Appellants’ position that, because Appellants other than R.W.W. may still avail themselves of the opportunity to have their sex offender registration excused, their adjudications do not trigger the DNA statute’s application.  The statute allowing juveniles to request to be excused from sex offender registration does not have a time limit.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 62.13(l) (stating that a person who has registered as a sex offender, 
regardless of when the delinquent conduct or the adjudication for the conduct occurred
, may file a motion seeking excusal from registration).
  
Consequently, Appellants’ argument would render the DNA statute meaningless because it could not take effect until the juvenile decided to file a motion to excuse sex offender registration.  Such a reading is not permissible.  
See
 
Cont’l Cas. Ins. Co. v. Functional Restoration Assocs.
, 19 S.W.3d 393, 402 (Tex. 2000) (stating that courts should avoid a statutory construction that renders all or a part of a statute meaningless).

We hold that there was evidence of probative force supporting the trial court’s amendment of Appellants’ probation conditions to add the requirement that they provide a DNA specimen. 
 Accord J.D.P.
, 85 S.W.3d at 429 (holding evidence legally sufficient to support jury’s finding that appellant should be placed in Texas Youth Commission).  The trial court’s amendment of the probation conditions in each case was, likewise, not so against the great weight and preponderance of the evidence as to be manifestly unjust.  
See In re C.C.
, 13 S.W.3d 854, 859 (Tex. App.—Austin 2000, no pet.) 
(holding evidence factually sufficient to support juvenile court’s finding that reasonable efforts were made to prevent need to remove appellant from home).  Accordingly, we overrule Appellants’ fourth issue.

VIII.  Conclusion

Having overruled each of Appellants’ issues, we affirm the trial court’s judgments.

SUE WALKER

JUSTICE

PANEL F: CAYCE, C.J.; WALKER, J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

DELIVERED:
 December 18, 2003

FOOTNOTES
1:
The court did not issue warrants for collection of the blood samples.

2:
Appellants have not separately briefed or analyzed their state constitutional claims; therefore, we will not address them.  
Black v. State
, 26 S.W.3d 895, 901 n.4 (Tex. Crim. App. 2000); 
Heitman v. State
, 815 S.W.2d 681, 691 n.23 (Tex. Crim. App. 1991).

3:
In fact, Texas Family Code section 54.0405 has been cited only once:  in a footnote in a dissent.  
See Beeman v. State
, 86 S.W.3d 613, 620-21 n.3 (Tex. Crim. App. 2002) (Johnson, J., dissenting) (using statute as example of invasive search authorized by statute).

4:
Chapter 54 of the Texas Family Code contains many provisions that do not involve criminal punishment, including procedures for:  conducting detention hearings via interactive video; hearsay rule exceptions; testing for sexually transmitted diseases, AIDS, or HIV infection; and limited right to appeal warnings.  
Tex. Fam. Code Ann. 
§§ 54.012, 54.031, 54.033, 54.034 (Vernon 2002).

5:
In a publishing quirk, 
Goord
 is not designated as either a published opinion or an unpublished opinion.  To date, however, five courts and a law review article have cited this case.  Accordingly, we likewise utilize 
Goord’s
 analysis to the extent it is helpful, despite the case’s uncertain precedential value.

6:
Other jurisdictions have likewise found that their DNA statutes did not violate the Ex Post Facto Clause.  
See Shaffer v. Saffle
, 148 F.3d 1180, 1182 (10th Cir.
), 
cert. denied
, 525 U.S. 1005 (1998); 
Rise v. Oregon
, 59 F.3d 1556, 1562 (9th Cir. 1995), 
cert. denied
, 517 U.S. 1160 (1996); 
Gilbert v. Peters
, 55 F.3d 237, 238-39 (7th Cir. 1995); 
Ewell v. Murray
, 11 F.3d 482, 486 (4th Cir. 1993)
, 
cert. denied
, 511 U.S. 1111 (1994); 
Jones v. Murray
, 962 F.2d 302, 309 (4th Cir.), 
cert. denied
, 506 U.S. 977 (1992); 
Miller v. United States Parole Comm’n
, 259 F. Supp. 2d 1166, 1170-72 (D. Kan. 2003); 
United States v. Sczubelek
, 255 F. Supp. 2d 315, 324-26 (D. Del. 2003); 
Vore v. United States Dep’t of Justice
, 281 F. Supp. 2d 1129, 1138 (D. Ariz. 2003); 
Reynard
, 220 F. Supp. 2d at 1162;
 Kruger v. Erickson
, 875 F. Supp. 583, 588-89 (D. Minn. 1995), 
aff’d
, 77 F.3d 1071 (8th Cir. 1996)
; 
Vanderlinden v. State
, 874 F. Supp. 1210, 1216 (D. Kan. 1995), 
aff’d
,
 103 F.3d 940 (10th Cir. 1996);
 Appeal in Maricopa County
, 930 P.2d at 500 (dealing with juveniles and DNA statute); 
Jamison v. People
, 988 P.2d 177, 180 (Colo. Ct. App. 1999); 
Doe v. Gainer
, 642 N.E.2d 114, 116-17 (Ill. 1994), 
cert. denied
, 513 U.S. 1168 (1995)
;
 Cooper v. Gammon
, 943 S.W.2d 699, 704, 707 (Mo. Ct. App. W.D. 1997); 
State v. Norman
, 660 N.W.2d 549, 556-57 (N.D. 2003) (not reaching the merits of the ex post facto argument but citing with approval numerous cases from other jurisdictions); 
Kellogg v. Travis
, 728 N.Y.S.2d 645, 647 (N.Y. Sup. Ct. 2001), 
aff’d as modified
, 750 N.Y.S.2d 12 (2002); 
Dial v. Vaughn
, 733 A.2d 1, 4-5 (Pa. Commw. Ct. 1999).

7:
The non-Texas cases applying this balancing analysis include:  
Shaffer
, 148 F.3d at 1181; 
Boling v. Romer
, 101 F.3d 1336, 1340 (10th Cir. 1996); 
Schlicher
, 103 F.3d at 943; 
Rise
, 59 F.3d at 1560-62; 
Murray
, 962 F.2d at 307-08; 
Kruger
, 875 F. Supp. at 588-89
; 
Vanderlinden
, 874 F. Supp. at 1214-15 (involving juvenile required to give DNA sample)
; Gilbert v. Peters
, Nos. 93 C 20012, 92 C 20354, 1994 WL 369643, at *4-6 (N.D. Ill. June 28, 1994) (memo. op.), 
aff’d
, 55 F.3d 237 (7th Cir. 1995); 
Sanders v. Coman
, 864 F. Supp. 496, 499 (E.D.N.C. 1994);
 Ryncarz v. Eikenberry
, 824 F. Supp. 1493, 1498-99 (E.D. Wash. 1993);
 D.B. v. State
, No. CR-01-0616, ___ So.2d ___, 2003 WL 42170, at *9 (Ala. Crim. App.)
;
 Appeal in Maricopa County
, 930 P.2d at 500-01 (involving a juvenile required to give a DNA sample); 
King
, 99 Cal.Rptr.2d at 228; 
In re Robert K.
, 785 N.E.2d 562, 565-66 (Ill. Ct. App. 2003) (involving juvenile required to give DNA sample); 
People v. Calahan
, 649 N.E.2d 588, 591-92 (Ill. Ct. App. 1995); 
People v. Wealer
, 636 N.E.2d 1129, 1135 (Ill. Ct. App. 1994); 
State v. Maass
, 64 P.3d 382, 389 (Kan. 2003);
 
Landry
, 709 N.E.2d at 1091-92; 
Cooper
, 943 S.W.2d at 704-05;
 Gaines v. State
, 998 P.2d 166, 171-72 (Nev.), 
cert. denied
, 531 U.S. 856 (2000); 
Nicholson
, 724 N.E.2d at 1221 (involving a juvenile required to give a DNA sample);
 State ex rel. Juvenile Dep’t of Multnomah County v. Orozco
, 878 P.2d 432, 435-36 (Or. Ct. App. 1994) (same); 
Commonwealth v. Pa. Dep’t of Corrections
, 829 A.2d 788, 794 (Pa. Commw. Ct. 2003); 
Dial
, 733 A.2d at 6-7;
 Johnson v. Commonwealth
, 529 S.E.2d 769, 779 (Va.), 
cert. denied
, 531 U.S. 981 (2000); 
Doles v. State
, 994 P.2d 315, 318-19 (Wyo. 1999) .

8:
We recognize 
Rome 
and 
Groceman
 have limited precedential value; however, we cite them for completeness because they are the only Texas cases to address the reasonableness of DNA sample requirement.  
See
 Tex. R. App. P.
 47.4.

9:
Although 
Edmond
 and 
Ferguson
 have cast doubt on the continued viability of the pure balancing test analysis employed by the vast majority of courts addressing the constitutionality of statutory DNA databanks,
 we note that the United States Supreme Court has nonetheless denied certiorari in many of these cases.

10:
We note the DNA statute’s procedural safeguards are more stringent than those required for the issuance of a warrant based on a finding of probable cause.  An order for a blood draw follows either an adjudication of delinquency, which is based on a determination beyond a reasonable doubt, or a constitutionally safeguarded admission by a juvenile that an enumerated sexual offense was committed.  
See Appeal in Maricopa County
, 930 P.2d at 500.  In effect, the beyond-a-reasonable-doubt standard implicit in the DNA statute is a substantially greater burden than the finding of probable cause required for a search warrant.  
See id.

11:
See Velasquez
, 329 F.3d at 421; 
Groceman
, 2002 WL 1398559, at *3-4.

12:
Our research has revealed two cases holding that a statutorily required blood draw violates the Fourth Amendment.  
See United States v. Kincade
, 345 F.3d 1095, 1112-14 (9th
 Cir. 2003)
; 
United States v. Miles
, 228 F. Supp. 2d 1130, 1140 (E.D. Cal. 2002).  
Kincade 
has only been used for comparison.
  See United States v. Plotts
, 347 F.3d 873, 877 (10th
 Cir. 2003)
; Padgett v. Ferrero, 
No. 1:01-CV-1936-TWT, ___ F. Supp. 2d ___, 2003 WL 22927490, at *3 (N.D. Ga. Dec. 10, 2003); 
State v. Hauge
, 79 P.3d 131, 146 n.6 (Hawaii 2003)
.  
Miles
 has not, however, been followed by any other courts; the 
Miller
, 
Kimler, Sczubelek,
 and 
Vore 
courts disagreed with or 
declined to follow 
Miles
; and the 
Goord
 court distinguished 
Miles
. 

13:
Appellants cite no cases supporting, and do not separately analyze, their contention that the Texas Constitution confers greater protection in this area of the law than the federal constitution.  Therefore, we will not address their state constitutional arguments.  
See Black
, 26 S.W.3d at 901 n.4; 
Heitman
, 815 S.W.2d at 691 n.23.

14:
Neither the Texas Family Code nor Chapter 62 of the Code of Criminal Procedure prohibits a court from requiring a DNA specimen as a condition of probation for a juvenile who has succeeded in having the sex offender registration requirement excused.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 62.13
(a) (stating only that “[a] person who has an adjudication of delinquent conduct that would otherwise be reportable . . . does not have a reportable adjudication of delinquent conduct . . . if the juvenile court enters an order . . . excusing compliance”).