COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-331-CV
 
 
 
IN 
THE MATTER OF R.W.R.
 
 
 
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. Introduction
        Appellant 
R.W.R. appeals from the trial court’s disposition order committing him to the 
Texas Youth Commission (TYC) for a term of eight years. In his sole issue, 
R.W.R. complains that the trial court abused its discretion by committing him to 
the TYC. We will affirm.
II. Factual and 
Procedural Background
        On 
September 29, 2004, R.W.R. stipulated to evidence establishing that he engaged 
in delinquent conduct by committing the felony of indecency with a child on 
September 1, 2003. The trial court adjudicated R.W.R. delinquent and proceeded 
to the disposition phase where multiple witnesses testified, including R.W.R. 
The trial court admitted a social history report completed by Rodney D. Lee, a 
probation officer, and a prior judgment of delinquency and probation order.
        Evidence 
presented at the disposition hearing showed that R.W.R. has lived with his 
grandmother in Dallas for most of his life. He often visited his mother during 
the summertime and moved in with her from October 2002 to April 2003. R.W.R. 
moved in with his mother because his behavior began to deteriorate and he began 
to make very poor choices while living with his grandmother.[2]  
R.W.R.’s mother testified that he moved in with her in order “to get back on 
the right track” and to “start fresh . . . with a new, clean 
record.”  R.W.R., however, continued in the same line of conduct—making 
friends his mother disapproved of, making failing grades, getting into trouble 
at school.  R.W.R’s mother kicked him out of her house after he raised 
his hand as if to strike her.  R.W.R. lived with his uncle from summer 2003 
to May 2004.  R.W.R. left his uncle’s house and returned to live with his 
grandmother in May 2004 because he felt his uncle was too strict.
        The 
State established that R.W.R. has been involved in numerous criminal activities 
over the last two years.  Norma Coronado, a resident of Mesquite, testified 
that her house was broken into on October 4, 2002 and that her Ford F-150 pickup 
truck was stolen.  Dallas police located the stolen truck five days later 
while it was being driven and pulled it over.  R.W.R. was the driver, and 
he was arrested for unauthorized use of a motor vehicle.  The case was 
ultimately dismissed.
        Joe 
McGlothlin of Arlington testified that on May 16, 2003 he stepped outside to 
make sure the doors to his truck were locked. McGlogthlin encountered R.W.R. 
inside of his truck, and R.W.R. pointed a handgun at him and said, 
“back.”  McGlothlin called 911, and police later apprehended R.W.R. 
after he attempted to flee on foot.  In R.W.R.’s possession was 
McGlothlin’s cell phone and a pocket knife.  During the foot chase, 
R.W.R. discarded what turned out to be a BB gun (which looked like a Sig-Sauer 
P232) and a black ski mask.  R.W.R. was adjudicated delinquent of robbery, 
possession of a prohibited weapon, and evading arrest and was placed on 
probation by an order signed on August 26, 2003.  He testified that he 
feels as though he has “changed” and matured since the robbery incident in 
May 2003.
        The 
events R.W.R. stipulated to at the adjudication hearing occurred in September 
2003, shortly after he was placed on probation.  R.W.R. stipulated to 
evidence that while at his mother’s residence he intentionally touched the 
vagina of his then seven-year-old sister with the intent to gratify his sexual 
desires.
        In 
March 2004, brass knuckles were found in R.W.R.’s backpack at school.  He 
admitted they were his, but insisted he accidentally took them to school. 
R.W.R.’s social history report indicates that he was expelled from Arlington 
Independent School District and that he enrolled in the Juvenile Justice 
Alternative Education Program (JJAEP) where he successfully completed forty-two 
days of his ninety-day expulsion.
        In 
May 2004, Dalworthington Gardens police officers pulled over a vehicle reported 
to be driving erratically; R.W.R. was driving. Inside they found a BB gun that 
resembled a Glock and a set of brass knuckles. R.W.R. admitted that the brass 
knuckles were his.
        In 
July 2004, R.W.R. was shot in what he described as an “attempted carjacking” 
of his vehicle.
        At 
the conclusion of the hearing, the State recommended that R.W.R. be committed to 
the TYC.  After a brief recess, the trial court committed R.W.R. to the TYC 
for a term of eight years with a possible transfer to the Institutional Division 
of the Texas Department of Criminal Justice.  This appeal followed.
III. 
Sufficiency of Evidence
        R.W.R. 
argues that the trial court abused its discretion by committing him to the TYC 
because the evidence is legally and factually insufficient to support the trial 
court’s findings (1) that reasonable efforts were made to prevent or eliminate 
the need for his removal from home and to make it possible to return home and 
(2) that he cannot be provided the quality of care and level of support and 
supervision in his home that he needs to meet the conditions of probation.
        A. Standard of Review and Legal Standards
        After 
a juvenile has been adjudged to have engaged in delinquent conduct, the juvenile 
court has broad discretion to determine a suitable disposition. In re C.J.H., 
79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.). We will not reverse 
the juvenile court’s findings regarding disposition absent a clear abuse of 
discretion. Id.
        To 
determine whether a trial court abused its discretion, we must decide whether 
the court acted without reference to any guiding rules or principles; in other 
words, whether the act was arbitrary or unreasonable. In re B.N.F., 120 
S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.).  Merely because a 
trial court may decide a matter within its discretion in a different manner than 
an appellate court would in a similar circumstance does not demonstrate that an 
abuse of discretion has occurred.  Id.
        An 
abuse of discretion does not occur where the trial court bases its decisions on 
conflicting evidence. Id. Furthermore, an abuse of discretion does not 
occur as long as some evidence of substantive and probative character exists to 
support the trial court’s decision.  Id.
        In 
an appeal from a juvenile disposition, we apply the civil standards of review 
for legal and factual sufficiency of the evidence, which are relevant factors in 
determining whether the trial court abused its discretion. C.J.H., 79 
S.W.3d at 702-03; see also In re D.L.C., 124 S.W.3d 354, 375 (Tex. 
App.—Fort Worth 2003, no pet.). In reviewing legal sufficiency, we consider 
only the evidence and inferences tending to support the findings under attack 
and set aside the judgment only if there is no evidence of probative force to 
support the findings.  D.L.C., 124 S.W.3d at 375; C.J.H, 79 
S.W.3d at 703; In re T.K.E., 5 S.W.3d 782, 785 (Tex. App.—San Antonio 
1999, no pet.).  In reviewing factual sufficiency, we consider and weigh 
all the evidence and set aside the judgment only if the finding is so against 
the great weight and preponderance of the evidence as to be manifestly 
unjust.  D.L.C., 124 S.W.3d at 375; T.K.E., 5 S.W.3d at 785.
        B. Evidence Legally and Factually Sufficient
        To 
commit a juvenile to the TYC, the trial court must find and include in its 
disposition order its determination that (A) it is in the child’s best 
interests to be placed outside his home, (B) reasonable efforts were made to 
prevent or eliminate the need for the child’s removal from the home and to 
make it possible for the child to return to his home, and (C) the child cannot 
be provided the quality of care and level of support and supervision in his home 
that he needs to meet the conditions of probation.  Tex. Fam. Code Ann. § 54.04(i)(1) 
(Vernon Supp. 2004-05).  Here, the trial court made the mandatory findings 
in its disposition order.
        The 
record demonstrates that attempts were made to rehabilitate R.W.R. without 
committing him to the TYC. In August 2003, R.W.R. was placed on probation, as 
opposed to being committed to the TYC, after being adjudicated delinquent of 
robbery, possession of a prohibited weapon, and evading arrest.  The 
probation order states that the best interests of the child and society will be 
served by placing R.W.R. on probation in order “[t]o afford the juvenile an 
opportunity for rehabilitation under the supervision of the Court and/or to 
prevent law violations.”  Moreover, R.W.R.’s social history report 
indicates his involvement in the following “Juvenile Services Programs”: 
TCAP (6-13-03 to 8-24-03), Home Detention (6-03-03 to 6-12-03), Electronic 
Monitoring (6-13-03 to 6-26-03), ISP (6-16-03 to 10-16-03), Spotlight (6-16-03 
to 6-27-03), and JJAEP (4-12-04 to time of trial). Despite participation in 
these programs and despite having previously been placed on probation, R.W.R. 
stipulated to evidence establishing that he engaged in delinquent conduct by 
committing the offense of indecency with a child, a second degree felony 
punishable by confinement of up to twenty years.  Considering R.W.R.’s 
involvement in the various juvenile programs and the juvenile court’s express 
attempt to rehabilitate him by placing him on probation, we hold that there is 
both legally and factually sufficient evidence to support the trial court‘s 
finding that reasonable efforts were made to prevent or eliminate the need to 
remove R.W.R. from his home and to make it possible to return home.  See 
D.L.C., 124 S.W.3d at 375; T.K.E., 5 S.W.3d at 785.
        With 
regard to R.W.R.’s other argument challenging the trial court’s finding that 
he cannot be provided the quality of care and level of support and supervision 
in his home that he needs to meet the conditions of probation, the trial court 
heard evidence that R.W.R. lived with his grandmother at the time his behavior 
began to deteriorate. He then lived with his mother, but she kicked him 
out.  R.W.R. also lived with his uncle, but R.WR. moved out and returned to 
his grandmother’s because he thought his uncle was too strict. R.W.R.’s 
mother testified that he had a good support system, that he had people who loved 
him, and that he “had a lot of opportunities.”  Nonetheless, R.W.R. 
engaged in delinquent behavior despite the presence of family members attempting 
to provide support and guidance for him. Recognizing this, the trial court, in 
its disposition order, found that it would be in the best interests of R.W.R. 
and society if he was committed to the TYC because R.W.R. “needs a highly 
structured environment with constant supervision and control.”  Thus, we 
hold that there is both legally and factually sufficient evidence to support the 
trial court’s finding that R.W.R. cannot be provided the quality of care and 
the level of support and supervision that he needs to meet the conditions of 
probation.  See D.L.C., 124 S.W.3d at 375; T.K.E., 5 S.W.3d 
at 785.  Accordingly, the trial court did not abuse its discretion by 
committing R.W.R. to the TYC.  We overrule R.W.R.’s sole issue.
IV. Conclusion
        Having 
overruled R.W.R.’s sole issue, we affirm the trial court’s judgment.
  
  
                                                          PER 
CURIAM
  
 
PANEL 
F:   WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.
 
DELIVERED: 
August 4, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
This included making failing grades in school, being truant twenty-one times, 
being arrested for unauthorized use of a motor vehicle, and being involved with 
drugs.