In the Matter of CPD

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS.   2-03-132-CV

2-03-133-CV

IN THE MATTER OF C.P.D.

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant C.P.D. perfected this appeal from the juvenile court’s judgment adjudicating him delinquent, modifying a prior disposition order, and ordering him committed to the Texas Youth Commission (TYC).  Appellate counsel has filed an 
Anders
 brief asserting that there are no grounds that could be argued successfully on appeal.  
Anders v. California
, 386 U.S. 738, 87 S. Ct. 1396 (1967).  We grant counsel’s motion to withdraw and affirm the trial court’s judgment.

II.  Procedural Background

In November 2001, the juvenile court adjudicated C.P.D. delinquent for committing an aggravated sexual assault, a first-degree felony.  
See
 
Tex. Penal Code Ann.
 § 22.021(e) (Vernon Supp. 2004).  The court placed C.P.D. on two years’ probation and ordered him to abide by the court’s terms and conditions, including attending sex offender counseling and not violating any laws.  During the course of probation, C.P.D. was unsuccessfully discharged from a sex offender counseling program and committed the offense of indecency with a child.  
See id.
 § 21.11 (Vernon 2003).

Thereafter, the State filed a motion to modify disposition and a second petition regarding a child engaged in delinquent conduct, alleging that C.P.D. violated the terms of his probation and engaged in delinquent conduct by contacting the genitals of C.R., a child younger than seventeen years and not his spouse, and by causing C.R. to touch C.P.D.’s genitals.  The State requested that C.P.D. be committed to the custody of TYC.

At the hearing, C.P.D. stipulated to the evidence showing that he engaged in indecency with a child by contact while on probation.  The juvenile court adjudicated C.P.D. delinquent of the new offense and proceeded to consider the motion to modify.  The court determined that C.P.D. had violated a reasonable and lawful term of his probation by committing the new offense and by being unsuccessfully discharged from sex offender counseling.  The court entered an order of commitment, transferring C.P.D. to the custody and care of TYC for an indeterminate period not to surpass his twenty-first birthday.

III.  The 
Anders
 Brief

C.P.D.’s court-appointed appellate counsel filed a motion to withdraw as counsel.  In support of his motion, counsel filed a detailed brief in which he avers that, in his professional opinion, this appeal is frivolous.  The Supreme Court of Texas has held that the 
Anders
 procedure applies to juvenile proceedings.  
In re D.A.S.
, 973 S.W.2d 296, 299 (Tex. 1998) (orig. proceeding).

Counsel’s brief and motion meet the requirements of 
Anders
 by presenting a professional evaluation of the record demonstrating why there are no arguable grounds for relief.  This court provided C.P.D. the opportunity to file a pro se brief, even granting C.P.D. a lengthy extension of time to file a pro se brief, but he did not do so.
(footnote: 2)  Once C.P.D.’s court-appointed counsel files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of 
Anders
, we must conduct an independent examination of the record and essentially rebrief the case to see if there is any arguable ground that may be raised on C.P.D.’s behalf.  
See
 
Stafford v. State
, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).

IV.  Independent Examination of Record

A. Proper Admonishments Given

The juvenile court adequately admonished C.P.D. before his adjudication hearing and his modification hearing.  
Cf.
 
Tex. Fam. Code Ann.
 § 54.03(b) (Vernon Supp. 2004) (setting forth admonishment requirements for juvenile offenders at adjudication hearings).  C.P.D. indicated that he understood the charges against him and that he waived his rights.  

B. Sufficient Evidence Supporting Adjudication and Modification

C.P.D. stipulated to evidence that he committed the felony offense of indecency with a child while on probation and stated that the stipulated evidence was true and correct.  Thus, the evidence supporting the adjudication of delinquency is legally and factually sufficient.  
See
 
In re D.L.C.
, 124 S.W.3d 354, 375-76 (Tex. App.—Fort Worth 2003, no pet.) (holding evidence legally and factually sufficient to support adjudication of delinquency ); 
In re B.P.H.
, 83 S.W.3d 400, 408 (Tex. App.—Fort Worth 2002, no pet.) (holding evidence legally and factually sufficient to support adjudication of deliquency). 

The stipulated evidence is likewise sufficient to support the trial court’s judgment to modify disposition and its order of commitment.  
See
 
Tex. Fam. Code Ann
. § 54.05(f); 
In re M.A.L.
, 995 S.W.2d 322, 324 (Tex. App.—Waco 1999, no pet.) (stating plea of true to probation violation and stipulation to evidence are analogous to judicial confession, justifying court’s finding that violation was committed by preponderance of evidence).

C. Effective Assistance of Counsel

There is no evidence in the record showing that C.P.D. received ineffective assistance of counsel.  
See Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  Thus, we continue our review of the record by proceeding with the arguable grounds presented by C.P.D.’s counsel.

V.  Counsel’s Arguable Grounds Are Not Meritorious

C.P.D.’s counsel raises three arguable grounds in his brief:  (1) the absence of C.P.D’s mother during the court proceedings directly contravenes the purpose of the family code provision requiring her attendance; (2) the trial court lacked jurisdiction because a copy of the State’s petition was not attached to the citation; and (3) the evidence is factually insufficient to support the judgment.  However, after thoroughly examining each ground, C.P.D.’s counsel concludes that none of the arguments would be meritorious.  We agree.

A. Absence of C.P.D.’s Mother Was Not Error

In his first arguable ground, C.P.D.’s counsel contends that the absence of C.P.D’s mother during the court proceedings directly contravenes the purpose of the family code provision requiring her attendance.  C.P.D.’s father and grandparents attended the adjudication and modification hearing, but his mother did not attend the hearing. Section 51.115 of the Texas Family Code requires all parents to attend the adjudication and disposition hearings.  
Tex. Fam. Code Ann.
 § 51.115(a) (Vernon 2002).  The code also provides, however, that “[i]f a person required under this section fails to attend a hearing, the juvenile court may proceed with the hearing.”  
Id.
 § 51.115(c); 
see also In re Edwards
, 644 S.W.2d 815, 818 (Tex. App.—Corpus Christi 1982, writ ref’d n.r.e.) (holding that issuance of summons to either of child’s parents is sufficient).  C.P.D. made no objection at the hearing that his mother was not present.  Accordingly, the alleged arguable error was not preserved.  
See
 
Tex. R. App. P.
 33.1(a) (stating that complaint must be made to trial court by timely request, objection, or motion as prerequisite to presenting complaint for appellate review).

B. 
Trial Court Had Jurisdiction

C.P.D.’s counsel’s second arguable ground is that the trial court lacked jurisdiction because section 53.06(b) requires that a copy of the petition be attached to the citation.  
Tex. Fam. Code Ann.
 § 53.06(b) (Vernon 2002). Although the citation in the record does not have a copy of the petition attached to it, the citation directs C.P.D. to appear on a certain date “[t]o answer the MOTION TO MODIFY DISPOSITION of the Criminal District Attorney’s office, Tarrant County, Texas, 
a copy of which is hereto attached 
. . . .” [Emphasis added.]  Additionally, the officer’s return on the citation recites that the officer delivered to C.P.D. the “MOTION TO MODIFY DISPOSITION 
a copy of which accompanies this citation
.” [Emphasis added.] Our review of the record as a whole reveals no jurisdictional defects.  The juvenile court has jurisdiction over a child who is alleged to have engaged in delinquent  conduct.  
Tex. Fam. Code Ann.
 § 51.04(a) (Vernon 2002).  C.P.D. stipulated that he was seventeen years old at the time of the hearing and that he resided in Tarrant County.  
See id.
 § 51.02(2)(A) (Vernon Supp. 2004) (stating “child” is person who is between ten and seventeen years of age).  The motion to modify disposition was not defective, and it provided sufficient notice to C.P.D. of the allegations against him.  
Cf. id.
 § 53.05(d) (stating that hearing on motion to modify disposition shall be held on petition of State and reasonable notice of hearing on motion to modify shall be given to all parties). Likewise, the State’s petition regarding a child engaged in deliquent conduct was not defective, and it provided sufficient notice to C.P.D. of the allegations against him.  
Cf. id.
 § 53.04(d) (setting forth requirements of petition for adjudication); 
In re A.B.
, 868 S.W.2d 938, 940 (Tex. App.—Fort Worth 1994, no writ) (discussing notice requirements for petition to adjudicate).  Accordingly, the appellate record’s failure to include a copy of the petition with the citation does not establish that the trial court lacked jurisdiction.

C. Evidence Supporting TYC Commitment Factually Sufficient

In his third arguable ground, C.P.D.’s counsel argues that the evidence is factually insufficient to support commitment to TYC.  Specifically, C.P.D.’s counsel contends that C.P.D. (1) was and continued to be a low-risk individual, (2) was not predatorily seeking out victims, (3) was not a deviant nor inclined toward deviance, (4) could successfully complete appropriate counseling and therapy, (5) committed the new offense as a result of being lured into a totally inappropriate setting, (6) facilitated immediate corrective action by self-reporting, (7) had grandparents who provided a supportive environment and were prepared for him to continue living with them, (8) presented an extremely low risk of recidivism, and (9) has the ability to do well in school. 

In reviewing C.P.D.’s sufficiency challenge to the evidence supporting his disposition, we review the evidence under the civil standard. 
 See D.L.C.
, 124 S.W.3d at 375.  In reviewing C.P.D.’s factual sufficiency claim, we consider and weigh all the evidence and set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust.  
See id.

If the court commits a juvenile to TYC, the court must find and include in its disposition order its determination that (A) it is in the child’s best interests to be placed outside the child’s home; (B) reasonable efforts were made to prevent or eliminate the need for the child’s removal from the home and to make it possible for the child to return to the child’s home; and (C) the child, in the child’s home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.  
Tex. Fam. Code Ann.
 § 54.04(i)(1).

In this case, the trial court included the required statutory findings in its order of disposition.  However, C.P.D.’s counsel argues that the evidence is factually insufficient to support these findings.  We disagree.

The trial court heard testimony from Lawrence Post, Norman Scroggins, Mary Jo Smith, and Debbie Moore.  Each testified regarding C.P.D.’s ability to reform if he remained in the community.

Lawrence Post, C.P.D.’s grandfather, testified that C.P.D. is an obedient child who attends church.  Mr. Post explained that he sought to comply with the court’s rules and requirements while C.P.D. was living with him, especially with regard to installing a lock on the computer room where C.P.D. accessed pornography, and that he is willing to devote his time and effort to see that C.P.D.’s counseling is successful.  He would like for C.P.D. to continue living at his home and has designed a room for C.P.D. in the new house Mr. Post is building. 

Norman Scroggins, a neighbor of the Posts, acknowledged that C.P.D. is a hard worker who helped him install sprinkler systems and fencing.  He explained that C.P.D. alerted him when his house was on fire and then helped him move his things out of the house.  He described C.P.D. as honest and courteous.

Mary Jo Smith, C.P.D.’s math teacher, testified that C.P.D. possesses exceptional motivation to work hard and scored a ninety-four on his last test. She said that she has not witnessed any behavior problems from C.P.D. and that there have been no complaints about him from other teachers.  Although she would welcome him back to her class, she did testify that the school computers have internet access and that there are places and instances where students are left alone.

Debbie Moore, C.P.D.’s counselor, stated that she met with C.P.D. five times and that his testing revealed that he was a heterosexual male who was socially immature—a seventeen-year-old boy functioning on a fourteen-year-old’s level.  She testified that he is not the type of personality out to hurt somebody and that all of his history includes sexual contact with people he was familiar with in his family; thus, he does not seek out sexual contact and has shown no evidence of possessing a predatory nature.  She mentioned that, to her knowledge, C.P.D. has not committed other crimes.

Based on her sessions with C.P.D., she found that he is “[l]ow risk based on no abnormal sexual preferences, no personality disorder, no criminal behavior, criminal thinking.”  However, she pointed out that just “because you’re low risk doesn’t mean that . . . person is never going to reoffend.  Some will. . . . He happened to be a low-risk offender who offended again.” 

She believes that accessing pornography on the computer did not cause C.P.D. to reoffend; instead, “[h]e chose to reoffend.”  She stated that C.P.D. understands that his behavior is unacceptable, but he still chooses the behavior. In other words, “[C.P.D.] is the only one that can keep himself from reoffending.”

C.P.D. acknowledged to Ms. Moore that he did not put a lot of effort into the sexual offender treatment, and she testified that she is not sure how much benefit he actually received from the treatment.  She based her conclusion on the fact that C.P.D. has a tendency to give excuses and to justify his behavior. She said that it was up to C.P.D. to get what he could out of the treatment. She sees a lot of motivation at this time for C.P.D. to get through the treatment because of the legal consequences.
(footnote: 3)
 Ms. Moore expressed her concern about C.P.D. continuing to be isolated from his peers if he continues to live with the Posts.  She said that although C.P.D. is very respectful, he is not comfortable with his peers and needs to develop age-appropriate skills.  She stated that school would be the best interaction he could get.  However, she said that C.P.D. needs to be closely supervised due to his second offense, which is “more of a community safety recommendation.”  Although she feels that there is always some risk when offenders are placed back in the community, she thinks that C.P.D. would be an acceptable outpatient candidate
(footnote: 4) with the additional support of individual therapy and possibly some psychiatric intervention.  Because she believes that there are a lot of things that C.P.D. has yet to deal with, she recommends continuing individual counseling possibly post-high school.  She concluded that there is an 85-90% chance that C.P.D. can be very successful in the treatment program and that the risk of recidivism is less than 5%.

The trial court questioned Ms. Moore about C.P.D.’s honesty because a letter to the probation department stated that C.P.D., upon being initially confronted with the new charges, denied them, and the charges came out when the polygraph was done.  Ms. Moore confirmed that C.P.D. told his dad that he needed to move, but he did not disclose his sexual behavior at that point.  The trial court expressed its concern that C.P.D. had committed two first-degree felonies, and ultimately found that six months was not sufficient time to allow C.P.D. to complete further sex offender treatment. 

Because the trial court found that six months was not a sufficient amount of time to allow C.P.D. to complete further sex offender treatment and considering all of the evidence, we hold that the trial court's findings in its disposition order committing C.P.D. to TYC are not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.  Therefore, none of the arguable grounds raised by C.P.D.’s counsel are meritorious.

VI.  Conclusion

Based on our independent review of the record and the three arguable grounds raised by C.P.D.’s counsel, we have determined that there is no error on which an appeal could be based or which would require reversal.  Therefore, because we agree with counsel’s professional determination that an appeal in the instant case is frivolous, we grant counsel’s motion to withdraw and affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; WALKER and MCCOY, JJ.

DELIVERED: July 8, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
We denied C.P.D.’s untimely request for a further extension of time to file a pro se brief because his request was not filed until after this appeal was submitted, almost six months after C.P.D.’s original pro se brief due date.

3:
The record demonstrates that possible charges against C.P.D. are also being pursued in the adult criminal system.

4:
Ms. Moore stated that they are trying to get candidates through the program in six months and that C.P.D. could get through the program “in six months with his hands tied behind his back.”