Affirmed and Opinion filed July 26, 2005









Affirmed and Opinion filed July 26, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00206-CV

____________

 

ALAN WADE
JOHNSON, Appellant

 

V.

 

THOMAS
ALSON DAVIS AND GARY L. JOHNSON, Appellees

_________________________________________________________

 

On Appeal from the 12th District Court

Walker County, Texas

Trial Court Cause No. 22,072

_________________________________________________________

 

O P I N I O N

All fifty states and the federal
government have enacted statutes creating DNA databases.  At the heart of this case is a prison inmate=s
constitutional challenges to the statutory authority of Texas prison officials
to collect a blood sample from him for purposes of DNA testing and inclusion in
the state=s DNA database.  The inmate also challenges the trial court=s order
transferring venue of his case and the trial court=s rulings
on various discovery matters.  Finding a
lack of merit in appellant=s
constitutional and venue arguments and a lack of merit or a lack of harmful
error as to the remaining issues, we affirm the trial court=s
judgment.








I.  Background

Appellant Alan Wade Johnson (AJohnson@) is an
inmate serving a life sentence for a 1994 conviction for aggravated
robbery.  He is incarcerated in the Texas
Department of Criminal Justice, Institutional Division.  Appellee Thomas Alson Davis is a Director of
the Texas Department of Public Safety (hereinafter referred to as the ATDPS
Director@).  Appellee Gary L. Johnson is the Executive
Director of the Texas Department of Criminal Justice (hereinafter referred to
as the ATDCJ
Executive Director@).  The Attorney General of the State of Texas
represents both appellees.

This suit arises out of Johnson=s
objection to the extraction of his blood by the State of Texas as part of the
state=s DNA
database system.  In September 2001, the
Texas Department of Criminal Justice (ATDCJ@) took a
blood sample from Johnson under Chapter 411, Subchapter G, of the Texas
Government Code, entitled ADNA
Database System.@  See Tex.
Gov=t Code Ann. '' 411.141B.154
(Vernon 2005).  Johnson=s blood
sample was sent to the Texas Department of Public Safety (ATDPS@) for
scientific analysis and maintenance in the DNA database.  Johnson did not consent to the taking of the
blood sample.

In May 2003, Johnson filed a pro
se lawsuit in Travis County, Texas, against the TDPS Director and the TDCJ
Executive Director in their official capacities, seeking injunctive relief and
a judgment declaring that the Texas DNA statute violates the Texas
Constitution.  Johnson alleged that this
statute allowed a University of Texas Medical Branch nurse to take his DNA
without his permission, resulting in a civil assault.  Johnson sought no damages in his original petition
or in any subsequent pleading, but sued only for injunctive and declaratory
relief. 








The TDPS Director and the TDCJ
Executive Director filed a motion to transfer venue of the case from Travis
County to Walker County.  The trial court
granted the motion and transferred venue of the case to Walker County.  Before the Travis County court signed the
transfer order, Johnson served requests for admissions, interrogatories, and
requests for production of documents on the TDPS Director and the TDCJ
Executive Director.  Before answering
this discovery, the TDPS Director and the TDCJ Executive Director filed special
exceptions to Johnson=s
pleadings, purportedly seeking more specificity with respect to the nature of
the acts or omissions they allegedly committed. 
Additionally, they argued that they were entitled to official and
qualified immunity and that they were entitled to more specific pleading with
regard to the allegations purportedly made against them in their individual
capacities.  They argued that because the
State had not waived immunity, the trial court lacked jurisdiction over a suit
for damages.  The TDPS Director and the
TDCJ Executive Director sought a protective order from the trial court pending
resolution of Ajurisdictional issues.@  

Johnson filed responses to the
special exceptions and motion for protection in which he pointed out that the
suit had never involved money damages and that neither the TDPS Director nor
the TDCJ Executive Director had been sued in his individual capacity.  Johnson=s
pleadings supported these arguments. 
Nevertheless, the trial court granted the special exceptions and the
motion for protection.

The TDPS Director and the TDCJ
Executive Director then filed a traditional motion for summary judgment in
which they asserted that they were entitled to judgment as a matter of law
because at least one element of each of Johnson=s claims
did not exist or all elements of their affirmative defensives were conclusively
established.  Johnson filed a response to
the motion for summary judgment in which he complained that there had not been
adequate time to conduct discovery and, on this ground, requested a
continuance.  In addition, Johnson
addressed each of the grounds asserted by the TDPS Director and the TDCJ
Executive Director in their summary-judgment motion.  The trial court granted the motion for
summary judgment and dismissed Johnson=s case
with prejudice. 








II. 
Issues Presented

Johnson
raises five issues on appeal.  First, he
claims the trial court erred in applying the law with respect to the TDPS
Director and the TDCJ Executive Director=s motion
to transfer venue.  In his second issue,
Johnson claims the trial court erred in granting the TDPS Director and the TDCJ
Executive Director=s motion
for summary judgment and in rejecting his constitutional challenges to the
Texas DNA statute.[1]  In his third and fourth issues, Johnson
asserts the trial court erred in ruling on various discovery matters.  In his final issue, Johnson asserts the trial
court erred in ruling on the TDPS Director and the TDCJ Executive Director=s special
exceptions and in granting them a protective order. 

II.  Analysis

A.        Venue

Johnson claims the trial court
erred in applying the law on the motion to transfer venue.  When reviewing a trial court=s ruling
on a motion to transfer venue, we consider the entire record.  Tex.
Civ. Prac. & Rem. Code Ann. '
15.064(b) (Vernon 2002).  In conducting
this review, we do not review the trial court=s ruling
for factual sufficiency of the evidence. 
Ruiz v. Conoco, 868 S.W.2d 752, 758 (Tex. 1993).  We view all the evidence in a light most
favorable to the trial court=s ruling,
and if there is any probative evidence in the record that venue was proper in
the county in which the lower court rendered judgment, we must uphold the trial
court=s venue
determinations.  Id. 








The Travis County district court
transferred venue from Travis County, where Johnson filed his suit, to Walker
County, the location of the penal institute in which Johnson resides.  The trial court took this action under
section 15.019(a) of the Texas Civil Practice and Remedies Code, a mandatory
venue provision, which states that except in a situation not applicable in this
case, Aan action
that accrued while the plaintiff was housed in a facility operated by or under
contract with the Texas Department of Criminal Justice shall be brought in the
county in which the facility is located.@  Tex.
Civ. Prac. & Rem. Code Ann. '
15.019(a) (Vernon 2002).  Johnson claims
venue was also mandatory in Travis County under section 15.017 because his suit
included a claim for invasion of privacy. See Tex. Civ. Prac. & Rem. Code Ann. ' 15.017
(Vernon 2002).  Relying on Marshall v.
Mahaffey, Johnson argues that when there are two counties of mandatory
venue, the plaintiff=s choice
between the two is controlling.  See
Marshall v. Mahaffey, 974 S.W.2d 942, 947 (Tex. App.CBeaumont
1998, pet. denied).  We need not decide
this issue because the venue provision on which Johnson relies applies only in
a suit for damages.  See Tex. Civ. Prac. & Rem. Code Ann. ' 15.017
(Vernon 2002).  Because Johnson did not
seek damages, his reliance on section 15.017 is misplaced.  Venue was not mandatory in Travis County.

Johnson was incarcerated within
the Texas Department of Criminal Justice and was being housed in Walker County
when he filed suit.  Therefore, venue was
mandatory in Walker County.  See Tex. Civ. Prac. & Rem. Code Ann. '
15.019(a).  The trial court did not err
in transferring venue of the case to Walker County.  See Tex.
Civ. Prac. & Rem. Code Ann. ''
15.019(a), 15.063(1).  Accordingly, we
overrule Johnson=s first
issue.

B.        Summary Judgment

Johnson asserts the trial court
erred in granting the TDPS Director and the TDCJ Executive Director=s motion
for summary judgment.  In reviewing a
traditional motion for summary judgment, we take as true all evidence favorable
to the nonmovant, and we make all reasonable inferences in the nonmovant=s
favor.  Dolcefino v. Randolph, 19
S.W.3d 906, 916 (Tex.
App.CHouston [14th Dist.] 2000,
pet. denied).  If the movant=s motion
and summary-judgment evidence facially establish its right to judgment as a
matter of law, the burden shifts to the nonmovant to raise a genuine, material
fact issue sufficient to defeat summary judgment.  Id.








Though Johnson did not assert any
challenge to the Texas DNA statute under the United States Constitution, he
claims this statute violates the Texas Constitution in several respects[2]
and that these constitutional infirmities entitle him to injunctive and
declaratory relief.  Other Texas courts
of appeals as well as federal courts have rejected the arguments Johnson
makes.  For the reasons explained below,
we, too, conclude that the Texas DNA statute does not offend the Texas
Constitution.

Search and Seizure

The nonconsensual extraction of
blood implicates Article 1, Section 9 of the Texas Constitution.  Tex.
Const. art. I, ' 9.  This provision states:

The people shall be secure
in their persons, houses, papers and possessions, from all unreasonable
seizures or searches, and no warrant to search any place, or to seize any
person or thing, shall issue without describing them as near as may be, nor
without probable cause, supported by oath or affirmation.  

Id.








The parties have not cited, and
we have not found, any appellate court decision holding a DNA collection
statute unconstitutional based on constitutional prohibitions against
unreasonable searches and seizures.  Nonetheless,
cases upholding the constitutionality of DNA collection statutes in this regard
have employed two different analytical approaches.  See State v. Transou, No.
W2003-02966-CCA-R3-CD, __ S.W.3d __, __, 2005 WL 1154345, at *8B9 (Tenn.
Crim. App. May 13, 2005) (listing cases that use either of two approaches to
analyzing whether DNA collection statutes violate constitutional prohibitions
against unreasonable searches and seizures). 
A majority of the courts have upheld these statutes under a traditional
assessment of reasonableness, considering the totality of the
circumstances.  See, e.g., Groceman v.
United States Dep=t of
Justice, 354 F.3d 411, 413B14 (5th
Cir. 2004) (per curiam).  This balancing
test weighs the governmental need for the action against the privacy concern of
the individual affected.  See id.  On the other hand, a minority of courts have
analyzed DNA collection statutes as falling within the Aspecial
needs@
exception to the warrant and probable-cause requirement.  See, e.g., In re D.L.C., 124 S.W.3d
354, 370B73 (Tex.
App.CFort
Worth 2003, no pet.).  

We need not decide today which is
the correct analytical approach.  Under
either analysis, we conclude that the Texas DNA collection statute does not
violate the search and seizure prohibition in Article 1, Section 9 of the Texas
Constitution.  See In re D.L.C.,
124 S.W.3d at 370B73
(upholding Texas DNA collection statute under Aspecial
needs@
analysis); Transou, __ S.W.3d at __, 2005 WL 1154345, at *8B10
(upholding Tennessee DNA collection statute under traditional reasonableness
test).  

Prohibition Against
Self-Incrimination








Johnson asserts that the seizure
of his DNA amounts to compulsory self-incrimination in violation of Article 1,
Section 10 of the Texas Constitution, which reads in pertinent part: A[the
accused ] shall have the right to demand the nature and cause of the accusation
against him, and to have a copy thereof. 
He shall not be compelled to give evidence against himself . . . .@  Tex.
Const. art. I, ' 10.  Though the Texas Constitution protects a
criminal defendant from the compelled production of evidence which would
implicate him in the crime of which he is accused, the extraction of blood for
analysis is neither testimonial nor communicative in nature and thus does not
offend the Texas Constitution.  See
In re D.L.C., 124 S.W.3d at 374. For the same reason, federal courts
considering the Fifth Amendment=s
protection against self-incrimination in the context of DNA databases have held
that blood extraction for purposes of a statutory DNA database system does not
offend the Fifth Amendment.  See Yusov
v. Martinez, No. 00 CIV. 5577(NRB), 2000 WL 159338, at *5 (S.D.N.Y. Oct.
24, 2000).  This same
analysis has been applied by at least one Texas court in holding that the Texas
DNA database statutory scheme withstands constitutional challenge on the basis
of self-incrimination.  See, e.g.,
In re D.L.C., 124 S.W.3d at 374B75.
 The TDPS Director and the TDCJ
Executive Director were entitled to judgment as a matter of law.  Accordingly, we overrule Johnson=s
self-incrimination challenge to the Texas DNA statute.

Right of Privacy

Inmates, because of their incarceration,
have diminished privacy interests. 
Once an individual is convicted on one of the felony offenses
included as a predicate offense under the statute, his identity becomes a
matter of state interest, and he loses any legitimate expectation of privacy in
the identifying information derived from the blood sample.  See Velasquez v. Woods, 329
F.3d 420, 421 (5th Cir. 2003); Rise v. Oregon, 59 F.3d 1556, 1559B62 (9th
Cir. 1995) (reaffirmed by en banc plurality in United States v. Kincade,
379 F.3d 813, 831B32 (9th
Cir. 2004)).  Therefore, the trial court
correctly ruled that Johnson=s
right-of-privacy challenge to the Texas statute fails as a matter of law.

Prohibition Against Ex
Post Facto Laws








Article I, section 16 of the
Texas Constitution prohibits the legislature from passing ex post facto
laws.  Tex.
Const. Art. I, ' 16.  Johnson argues the Texas DNA statute violates
the prohibition against enacting ex post facto laws because it inflicts a
greater punishment for his crime by authorizing the TDCJ Executive Director and
his agents to punish a prisoner who refuses to submit to DNA sampling by (1)
denying the prisoner parole eligibility or release on mandatory supervision,
and (2) using force.  Johnson also argues
the DNA statute, as applied to him, violates the prohibition against ex post
facto laws because it became effective after the date of his offense.  To determine whether a law violates the ex
post facto clause, we first must determine whether by enacting the statute, the
Texas legislature intended the statute to be punitive.  See Smith v. Doe, 538 U.S. 84, 92, 123
S. Ct. 1140, 1146, 155 L. Ed. 2d 164 (2003); Rodriguez v. State, 93
S.W.3d 60, 66 (Tex. Crim. App. 2002).  If
we conclude the legislature intended to enact a civil, nonpunitive,
nonregulatory scheme, we must examine the statute further and determine whether
it is punitive in purpose or effect so as to prevent courts from viewing it as
regulatory or civil in nature.  Smith,
538 U.S. at 92, 123 S. Ct. at 1147.  We
defer to the legislature=s stated
intent and only the clearest proof will override the legislature=s intent,
and transform what the legislature has deemed a civil remedy into a criminal
penalty.  Rodriguez, 93 S.W.3d at
67.

The legislature=s
express, primary intent in creating a DNA database is to assist federal, state,
and local criminal justice or law enforcement agencies in the investigation and
prosecution of sex-related offenses or other offenses in which biological
evidence is recovered.  Tex. Gov=t Code
Ann. ' 411.143(a) (Vernon 2005).  The legislature=s intent
is not to inflict additional punishment on a person for the offense at
hand.  In re D.L.C., 124 S.W.3d at
365.  Despite the intended civil,
regulatory nature of the DNA statute, we must address whether the statute is so
punitive in effect as to override the legislature=s nonpunitive
intent.  The Texas DNA statute, however,
is not so punitive in effect that it prevents us from viewing the DNA statute
as regulatory in nature.  Id. at
365B69.

Even though the legislature
enacted the Texas DNA statute after the date of Johnson=s crime,
it does not violate the prohibition on ex post facto laws because that statute
does not retroactively criminalize acts performed by Johnson before its
enactment.  See id. at 363.  Accordingly, we conclude the Texas DNA
statute does not violate the ex post facto clause of the Texas Constitution. 

Separation of Powers

Johnson asserts the legislature
violated the separation-of-powers doctrine when it created the DNA database by
encroaching on the powers of the judicial branch because, under the statute, an
inmate who refuses to give a DNA sample cannot be released on parole. Johnson
contends that the legislature is, in effect, re-sentencing him.  These arguments lack merit.








The power to pass laws is vested
in our state legislature.  See Tex. Const. Art. III, ' 30. As
noted, the DNA database is not punitive. 
Moreover, Johnson has no right to parole.  Both state and federal courts have held that
Texas prison inmates have no protected liberty interest in parole.  See, e.g., Johnson v. Rodriquez,
110 F.3d 299, 308 (5th Cir. 1997); Martin v. Tex. Bd. of Criminal Justice,
60 S.W.3d 226, 230 (Tex. App.CCorpus
Christi 2001, no pet.).  Therefore,
Johnson=s
contention that the Texas Legislature violated the separation-of-powers
doctrine when it created the DNA database has no merit.

Prohibition Against Bills
of Attainder

At common law, attainder was Athe act
of extinguishing a person=s civil
rights when that person is sentenced to death or declared an outlaw for
committing a felony or treason.@  Black=s Law Dictionary 137 (8th
ed. 1999).  A bill of attainder is a
legislative act that applies to a named individual or to an easily identified
member of a group in such a way as to inflict punishment without a trial.  United States v. Lovett, 328 U.S. 303,
315, 66 S. Ct. 1073, 1078, 90 L. Ed 1252 (1946).  Article I, section 16 of the Texas
Constitution provides that, ANo bill
of attainder, ex post facto law, retroactive law, or any law impairing the
obligation of contracts, shall be made.@  Tex.
Const. Art. I, ' 16.  Johnson asserts that the DNA statute is
punitive because it extinguishes his right to be free from terroristic threats,
assault, search and seizure of his blood, and taking his genetic property for
public use.  He also asserts the statute
preempts his right to be free from being compelled to give evidence against
himself, is an invasion of his and his family members= right to
privacy, and denies him due course of law.

Because the DNA database system
does not involve punishment, it does not violate the prohibition against bills
of attainder.  See
Cutshall v. Sundquist, 193 F.3d 466, 477 (6th Cir. 1999).  Accordingly, Johnson=s claim
lacks merit.  The trial court did not err
in granting summary judgment rejecting this constitutional challenge to the DNA
statute.

Civil Assault








To establish a prima facie claim
for civil assault, the plaintiff must establish the same elements required for
criminal assault.  See Moore=s Inc. v.
Garcia, 604 S.W.2d 261, 264 (Tex. Civ. App.CCorpus
Christi 1980, writ ref=d
n.r.e.).  Under Texas Penal
Code section 22.01(a)(3), an assault occurs when a person intentionally or
knowingly causes physical contact with another when the person knows or should
reasonably believe that the other will regard the contact as offensive or
provocative.  Tex. Pen. Code Ann. '
22.01(a)(3) (Vernon Supp. 2004B2005).  In his petition, Johnson alleged that Carla Hollman, a
phlebotomist allegedly acting as agent of the TDCJ Executive Director, took a
blood sample from him without his permission. 
In their motion for summary judgment, the TDPS Director and the TDCJ
Executive Director assert that Johnson could not pursue a viable claim for
civil assault against them because neither they nor their respective agencies
were involved in the actual taking of the DNA specimen from Johnson.  They further assert that they could not have
assaulted Johnson because neither of them came into contact with Johnson.

An appellant=s brief must contain a clear and concise argument for the
contentions made, with appropriate citations to the record.  Tex.
R. App. P. 38.1(h).  We must
interpret this requirement reasonably and liberally.  Republic Underwriters Ins. Co. v. Mex-Tex,
Inc., 150 S.W.3d 423, 427 (Tex. 2004). 
However, parties asserting error on appeal must put forth some specific
argument and analysis showing that the record and the law supports their
contentions.  See Tex. R. App. P. 38.1(h); San Saba
Energy, L.P. v. Crawford, __ S.W.3d __, __, No. 14-03-00980-CV, 2005 WL
1430620, at *13 (Tex. App.CHouston [14th Dist.] June 21, 2005, no pet. h.).  In his opening brief, Johnson lists assault
as one of the seven constitutional challenges he asserted in his petition and
argues that Athe seizure of his DNA amounts to a
confession wrestled from his body by physical assault.@ 
He does not, however, provide any argument, analysis, or citations to
any legal authority or to the record demonstrating that the law and the record
support his contention that the taking of a blood sample from him without his
consent constitutes civil assault or addressing the summary judgment grounds
asserted against this claim.  In his
reply brief, Johnson devotes a third of a page to responding to the argument of
the TDPS Director and the TDCJ Executive Director addressing Johnson=s civil assault allegation in his
petition, but he provides no citations to the record or to any legal
authority.  Even under a liberal
construction, Johnson=s appellate briefing on this issue is not sufficient to
articulate a clear and concise argument as to why we should reverse the trial
court=s judgment.  Because Johnson=s civil assault issue is inadequately
briefed, he has waived this argument. 








Having found that Johnson waived his civil assault issue and
that the trial court correctly granted summary judgment as to Johnson=s constitutional challenges, we
overrule Johnson=s second issue.

C.        Admissions

In his third issue, Johnson
asserts the trial court erred in applying the law in denying his motion to deem
matters admitted following the TDPS Director and TDCJ Executive Director=s failure
to respond to requests for admissions.  A
trial court has broad discretion to permit or deny the withdrawal of deemed
admissions.  Stelly v. Papania,
927 S.W.2d 620, 622 (Tex. 1996).  We will
set aside the trial court=s ruling
only if the record shows that the trial court clearly abused its discretion.  See Simon v. York Crane & Rigging Co.,
739 S.W.2d 793, 795 (Tex. 1987).

Johnson served requests for
admissions on the TDPS Director and the TDCJ Executive Director.  Although they answered these requests, they
did not file their responses within the prescribed time.  Johnson asserts that the trial court should
have deemed the requests admitted or, to the extent the requests were deemed
admitted automatically, the trial court should not have Aundeemed@
them.  Johnson argues that howsoever we
construe the trial court=s ruling,
the trial court erred in permitting the TDPS Director and the TDCJ Executive
Director to rely on responses and objections filed two days late.

A party may withdraw a deemed
admission if (1) the party shows good cause for the withdrawal, and (2) the
court finds that the parties relying upon the responses will not be unduly
prejudiced and that the presentation of the merits of the action will be
subserved by permitting the party to withdraw the admission.  Tex.
R. Civ. P. 198.3.  A party can establish good cause by showing that its failure to
answer was accidental or the result of a mistake, rather than intentional or
the result of conscious indifference.  Stelly,
927 S.W.2d at 622.

            The trial court has discretion to
allow a responding party to file discovery responses two days late.  We cannot say the trial court abused its
discretion in allowing the late filing of these discovery responses and
objections.  Accordingly, we overrule Johnson=s third
issue.








D.        Motion to Compel and Motion for Sanctions

In his fourth issue, Johnson
complains that the trial court erred in denying his motion to compel the TDPS
Director and the TDCJ Executive Director to respond to his discovery
requests.  Johnson also asserts that the
trial court erred in denying his motion for sanctions.  Johnson contends that both the TDPS Director
and the TDCJ Executive Director were two days late in filing responses to his
requests for the production of documents and that their trial counsel Ademonstrated
reckless disregard to Texas Rules of Civil Procedure, Texas Practice and
Remedies Code, [and] Texas State Bar Disciplinary Rules of Professional
Conduct.@  According to Johnson, trial counsel for the
TDPS Director and the TDCJ Executive Director erroneously stated that Johnson
was proceeding in forma pauperis when he was not and that she made other
allegedly inaccurate statements in filings with the trial court.  Johnson also alleges that the TDPS Director
and the TDCJ Executive Director engaged in a pattern of discovery abuse by
filing frivolous discovery objections and submitting a false discovery
certification.  Additionally, Johnson
asserts that the trial court erred in not imposing sanctions against these
parties and their counsel.

We review a trial court=s ruling
on a motion to compel discovery and for discovery sanctions under an
abuse-of-discretion standard.  Cire v.
Cummings, 134 S.W.3d 835, 838 (Tex. 2004). 
Trial courts have broad discretion in matters of discovery.  Although the TDPS Director and the TDCJ
Executive Director did not file their discovery responses on time, their
failure to do so is not necessarily sanctionable conduct.  Likewise, although there may have been
inaccuracies in their filings, the presence of inaccuracies or other
deficiencies does not mandate sanctions. 
The trial court has broad discretion in ruling on such matters, and its
failure to impose sanctions under these circumstances does not amount to an
abuse of discretion.  Finding no merit in
appellant=s arguments, we overrule his
fourth issue.  

E.        Other Rulings








In his fifth and final issue on
appeal, Johnson asserts the trial court abused its discretion in denying his
motion to set aside the trial court=s order
sustaining the TDPS Director and the TDCJ Executive Director=s special
exceptions and granting them a protective order.  We construe this appellate issue to fairly
subsume the propriety of the trial court=s
granting of the special exceptions and protective order.  See Tex.
R. App. P. 38.1(e).

Special Exceptions

We review a trial court=s ruling
on special exceptions for an abuse of discretion.  Bader v. Cox, 701 S.W.2d 677, 686
(Tex. App.CDallas 1985, writ ref=d
n.r.e.).  In making this determination,
we review the pleadings and construe the petition liberally, accepting as true
all the factual allegations set forth.  Aranda
v. Ins. Co. of N. Am., 748 S.W.2d 210, 213 (Tex. 1988).  

The TDPS Director and the TDCJ
Executive Director filed special exceptions to Johnson=s
petition, asserting, among other things, that his pleading failed to allege
waiver of sovereign immunity by the individuals named as defendants.  The TDPS Director and the TDCJ Executive
Director asserted that they were being sued in their official capacities as
directors of the TDPS and the TDCJ, and thus they were entitled to sovereign
immunity and could not be sued without the state=s
consent.  They further
asserted that they were entitled to a clear and concise statement setting forth
the acts and/or omissions on which Johnson purportedly relied to establish a
waiver of sovereign immunity.

Additionally, the TDPS Director
and the TDCJ Executive Director specially excepted to Johnson=s
petition in its entirety because, they claim, Johnson allegedly failed to state
with particularity the nature of the acts or omissions allegedly committed by
the TDPS Director and the TDCJ Executive Director that rose to the level of a
violation of the Texas Constitution. 
Finally, the TDPS Director and the TDCJ Executive Director specially
excepted to Johnson=s
pleading because, to the extent he sought relief against them in their
individual capacities, he did not state facts overcoming their entitlement to
official immunity and did not identify with particularity the nature of the
acts or omissions allegedly committed by each of them.  








Johnson=s
pleadings did not contain any of the defects alleged by the TDPS Director and the
TDCJ Executive Director.  Contrary to the
allegations in their special exceptions, 
Johnson did not sue for damages and he did not sue the TDPS Director and
the TDCJ Executive Director in their individual capacities.  Johnson filed a response in the trial court
in which he noted that he sought only injunctive and declaratory relief,
emphasizing that A[n]o
money damages have ever been sought.@  Johnson further noted that he was suing the
TDPS Director and the TDCJ Executive Director only Ain their
official capacity as directors of TDCJ and DPS@ and that
he did not need the state=s consent
to sue for injunctive and declaratory relief challenging an unconstitutional
statute.  

Nevertheless, the trial court
sustained all of the special exceptions and ordered Johnson to replead and to cure
the alleged defects in his petition.  The
trial court=s order warned that if Johnson
failed to do so by October 3, 2003, the trial court would strike each allegedly
defective paragraph of his pleading.  The
trial court signed this order on October 3, 2003, and the order was not filed
with the district clerk until October 7, 2003. 
Johnson asserts the trial court abused its discretion in sustaining the
special exceptions.  He complains that
the special exceptions were based on Adishonest
pleadings, that had no basis in law or fact.@  Additionally, Johnson notes that compliance
with the order was impossible because the deadline for repleading was the same
date on which the trial court signed the order. 


The record supports some of
Johnson=s
allegations.  However, even presuming the
trial court erred in sustaining the special exceptions, this error did not likely
cause the rendition of an improper judgment or prevent Johnson from properly
presenting the case on appeal.  See Tex. R. App. P. 44.1(a).  Although the trial court=s order
warned that Johnson=s
pleadings would be stricken if he failed to replead, Johnson did not replead,
and the trial court never took any action vis-à-vis striking his
pleading or otherwise enforcing its order granting the special exceptions.  Any error in sustaining these special
exceptions would not affect the correctness of the trial court=s order
granting summary judgment.  Therefore,
even if the trial court erred in sustaining the special exceptions, this error
is not reversible.








Protective Order

We review a trial court=s ruling
on a motion for protection under an abuse-of-discretion standard.  See Shell Oil v. Smith, 814 S.W.2d
237, 241 (Tex. App.CHouston
[14th Dist.] 1991, no writ).  In their
motion for protective order, the TDPS Director and the TDCJ Executive Director
made some inaccurate statements, including the following:

!                  
Johnson was proceeding in forma pauperis. 

!                  
Johnson was suing for damages. 

!                  
Johnson was suing the TDPS Director and the TDCJ Executive Director in
their individual capacities. 

 

These
statements formed the entire basis for the TDPS Director and the TDCJ Executive
Director=s motion
for protection from responding to discovery propounded by Johnson.  The TDPS Director and the TDCJ Executive
Director sought protection from discovery while the alleged Ajurisdictional
issues,@ which
were based on their claim of immunity, were pending, and this immunity defense
was based entirely on the inaccurate statements set forth above.  Just as there was no basis for granting the
special exceptions (because Johnson=s
pleading did not suffer from the alleged deficiencies), there was no basis for
the protective order because the only ground on which the  protective order was based C pending
jurisdictional issues based on immunity C did not
exist.  See Texas Natural Res.
Conservation Comm=n v.
IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). 
Contrary to the statements in the protective order, Johnson had not
asserted claims that would have triggered immunity or Ajurisdictional
issues.@  See id.  To the extent the trial court found
otherwise, it erred.








Even though the trial court erred
in ruling on the protective order, the error is not reversible because the
record shows that any such error did not probably cause the rendition of an
improper judgment or prevent Johnson from properly presenting the case on
appeal.  See Tex. R. App. P. 44.1(a).  The summary judgment was based on law points;
it did not turn on factual issues but rested entirely on a legal analysis of constitutional
issues.  The fact-based discovery from
which the TDPS Director and the TDCJ Executive Director were improperly
protected, if answered timely, would not have helped Johnson defeat the summary
judgment on the constitutional issues. 
Therefore, the trial court=s error
was harmless.  Accordingly, we overrule
Johnson=s fifth
and final issue.

Having overruled all of Johnson=s
appellate issues, we affirm the trial court=s
judgment.

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and Opinion filed July 26, 2005.

Panel consists of Justices
Anderson, Fowler, and Frost.

 

 











[1]  The trial
court and all parties refer to the TDPS Director and the TDCJ Executive Director=s summary judgment motion as a no-evidence one;
however, the record contains only one summary judgment motion, and it is a
traditional motion for summary judgment.





[2]  Although appellant identifies seven
separate constitutional challenges to the Texas DNA statute, in his appellate
briefing, he makes no argument and cites no authority to support his contention
that the DNA statute violates the ex post facto clause of the Texas
Constitution or that the DNA statute constitutes a bill of attainder.  Nor does appellant provide any argument or
authority to support his contention that the DNA statute amounts to civil
assault.