OPINION OF THE COURT
Richard F. Braun, J.
This is an action for a declaratory judgment to declare Executive Law § 995 (7), as amended, unconstitutional as applied to plaintiff and others similarly situated, and to order that defendant Katherine N. Lapp return to plaintiff his blood samples, DNA record, and reports based thereon, and retrieve and turn over to plaintiff all such blood samples, his DNA record, and reports distributed to any other agency or facility, such as the Federal Bureau of Investigation or local law enforcement agencies. Defendants move to dismiss the verified complaint, pursuant to CPLR 3211 (a).
Plaintiff was arrested on December 29, 1992 for felonious assault. He was indicted and convicted on August 25, 1994, after trial, of assault in the second degree and criminal possession of a weapon in the third degree, both class D felonies (Penal Law §§ 120.05, 265.02). Plaintiff was sentenced to a jail term of not less than 21/s years nor more than 7 years in prison. On September 3, 1999, he was released on parole. His sentence will expire on January 2, 2002.
On or about March 1, 2000, plaintiff’s parole officer notified plaintiff that he was to report for withdrawal of his blood for DNA data bank purposes and that a refusal would constitute a violation of parole for which he would be remanded to prison. Plaintiff refused on that date but, on March 8, 2000, plaintiff let his blood be taken, under protest.
In 1994, article 49-B of the Executive Law was enacted. The Commissioner of the New York State Division of Criminal *166 Justice Services was “authorized to promulgate a plan for the establishment of a computerized state DNA identification index within the division of criminal justice services.” (Executive Law § 995-c [1].) Such a plan was promulgated (9 NYCRR part 6192). Section 995-c required certain designated felony offenders to provide a blood sample for DNA testing in order to determine identification characters, which were specific to each offender, to be included in the New York State identification index. Section 995-c only applied to designated offenders, pursuant to Executive Law § 995 (7), who were convicted on or after the effective date of that provision, January 1, 1996. Thus, although plaintiff was a designated offender, the statute did not apply to him because he had been convicted before it went into effect.
However, in 1999, article 49-B was significantly revised. Its reach was expanded to include certain designated offenders, such as plaintiff, who had committed their offense(s) prior to the date that the law became effective but whose sentences had not been completed before that date. Thus, on its face, Executive Law § 995-c now applies to plaintiff.
Plaintiff’s attorney states that “[h]owever well meaning the New York legislature may be in their zeal to create a DNA bank, they are still constrained by constitutional limits on their power to act.” Plaintiff challenges the application to him and others similarly situated of the amendment of Executive Law § 995 (7), and thus of section 995-c, on the bases that they constitute ex post facto laws, and violate the double jeopardy provisions of the United States and New York State Constitutions, and that he was illegally searched in violation of the Fourth Amendment of the United States Constitution and that he had a vested right to be free of DNA testing.
United States Constitution, article I, § 10 (1) provides, in pertinent part, that “[n]o State shall * * * pass any * * * ex post facto Law.” To constitute such a law, it “must be retrospective — that is, ‘it must apply to events occurring before its enactment’ — and it ‘must disadvantage the offender affected by it,’ [Weaver v Graham, 450 US 24,] 29 [1981], by altering the definition of criminal conduct or increasing the punishment for the crime, see Collins v. Youngblood, 497 U.S. 37, 50, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990).” (Lynce v Mathis, 519 US 433, 441 [1997].)
Although the amendment to Executive Law § 995 (7) is applicable to plaintiff regarding events that occurred before the enactment of the amendment and did disadvantage him, the *167 amendment does not change the definition of any criminal conduct and is not punitive in nature. The intent of the amendment was not to punish persons such as plaintiff for past behavior but to expand the definition of persons who must submit tissue samples to the state DNA data bank so as to assist law enforcement officials in accurately solving crimes committed by persons already convicted of serious crimes (and sometimes absolve innocent persons of unjustified accusations) and thus promoting public safety (New York State Senate Introducer’s Mem in Support; Assembly Budget Report on Bills, Bill Jacket, L 1999, ch 560). Therefore, the amendment to Executive Law § 995 (7) was not an ex post facto law.
By the same token, plaintiff has not been placed in double jeopardy by the amendment. The double jeopardy concept is derived from the Fifth Amendment of the United States Constitution which states in part: “nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb.” That provision prevents a person from being prosecuted and punished more than once for the same criminal offense (United States v Ursery, 518 US 267, 273 [1996]). Plaintiff was neither prosecuted a second time for the crimes for which he was convicted nor punished a second time for those crimes. The statute at issue is not punitive, as discussed supra. Thus, the Double Jeopardy Clause does not apply here.
Under the Fourth Amendment of the United States Constitution and New York Constitution, article I, § 12, plaintiff had the right to be free from unreasonable searches and seizures, even as a parolee (People v Huntley, 43 NY2d 175, 180-181 [1977]). Even while in prison, a convicted prisoner does not lose all of his or her constitutional guarantees (Bell v Wolfish, 441 US 520, 545 [1979]). The United States Supreme Court has held that, when a person is compelled by the government to permit a bodily intrusion to obtain a blood sample, a Fourth Amendment search analysis is required, but the search may be deemed reasonable and a warrant therefor unnecessary, where “special needs” beyond normal law enforcement needs make the requirement of a warrant upon probable cause impracticable (Skinner v Railway Labor Executives’ Assn., 489 US 602, 616, 619 [1989]). Where there are such special needs, the court must do a balancing test between the privacy interests of the individual and the interests of the government in order to determine whether probable cause and a warrant are necessary under the particular circumstances (id., at 619).
Given the advances in technology, Executive Law § 995-c (3), as amended, does not even require that a designated of *168 fender give a blood sample, as the original version of the law did. Now, other tissue samples can be utilized to obtain DNA, such as by swabbing the inside of an offender’s cheek. Thus, plaintiff could have used a DNA collection method even less intrusive than the giving of a blood sample. In any event, even the taking of plaintiff’s blood was not so invasive as to be deemed an unreasonable search and seizure to require probable cause and a warrant under the circumstance of the sample being taken not to investigate whether plaintiff committed a particular crime but rather for the State’s DNA identification index for all designated offenders (cf., Skinner v Railway Labor Executives’ Assn., supra, at 634 [where the Court upheld drug and alcohol testing mandated by Federal Railroad Administration regulations]).
Plaintiff relies upon General Construction Law §§93 and 94 to argue that the original Executive Law article 49-B gave him the vested right to be free of DNA data bank blood testing, which right could not be interfered with by any subsequent legislation. General Construction Law § 93 provides:
“The repeal of a statute or part thereof shall not affect or impair any act done, offense committed or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected.”
General Construction Law § 94 provides:
“Unless otherwise specially provided by law, all actions and proceedings, civil or criminal, commenced under or by virtue of any provision of a statute so repealed, and pending immediately prior to the taking effect of such repeal, may be prosecuted and defended to final effect in the same manner as they might if such provisions were not so repealed.”
The original Executive Law article 49-B gave plaintiff no affirmative right to which General Construction Law § 93 would apply but merely omitted him from the defined category of designated offenders who could be required to provide a DNA blood sample. General Construction Law § 94 in no way applies under the circumstances because there was no such action or proceeding commenced and pending.
In three CPLR article 78 proceedings by petitioners to prevent the taking of blood samples for DNA analysis under *169 the amendment to Executive Law § 995 (7) expanding the definition of “designated offender,” constitutional challenges were not sustained, and the petitions were denied (Riddick v Sullivan, Sup Ct, NY County, July 10, 2000, Parness, J., index No. 400673/00; Yusov v Martinez, NYLJ, June 7, 2000, at 27, col 3 [Sup Ct, NY County]; Gayle v New York State Div. of Parole, Sup Ct, NY County, Mar. 21, 2000, Davis, J., index No. 101330/00). Constitutional challenges to DNA data bank collection statutes for convicted criminals similar to the challenges here have been upheld by other courts (see, e.g., Gaines v State, 998 P2d 166 [Nev 2000] [Nevada’s DNA testing statute]; Roe v Marcotte, 193 F3d 72 [2d Cir 1999] [Connecticut’s statute]; Shaffer v Saffle, 148 F3d 1180 [10th Cir 1998] [Oklahoma’s statute]; Boling v Romer, 101 F3d 1336 [10th Cir 1996] [Colorado’s statute]; Rise v Oregon, 59 F3d 1556 [9th Cir 1995] [Oregon’s law]; Gilbert v Peters, 55 F3d 237 [7th Cir 1995] [Illinois’ statute]; Kruger v Erickson, 875 F Supp 583 [D Minn 1995] [Minnesota’s law]; State v Olivas, 122 Wash 2d 73, 856 P2d 1076 [1993] [Washington State’s statute]; cf., People v McVickers, 4 Cal 4th 81, 840 P2d 955, 13 Cal Rptr 2d 850 [1992] [denied a challenge to a California law requiring of certain convicts blood testing for AIDS]; Jones v Murray, 962 F2d 302 [4th Cir 1992] [upholding most of Virginia statute]).
There is an extremely strong presumption that state laws are constitutional, which must be overcome beyond a reasonable doubt, and a court can declare a law unconstitutional only as a last resort (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11 [1976]). Plaintiff has not sustained his heavy burden. Executive Law § 995 (7), as amended, is constitutional as applied to plaintiff and others similarly situated. Defendants have demonstrated that this action should be dismissed.